LOGAN v. LOGAN, ADM'R.

1. The widow can claim nothing from  advancements  made by the husband to his children, and by them brought into hotchpot.
2. When the decree made by the orphans' court, gives to the  widow the benefit of the advancements made to the children, and this  fact appears in the decree itself, the error may be revised in the appellate court, without a formal exception to the action of the orphans' court.

Writ of Error to the Orphans' Court of Greene.

UPON  the settlement of the accounts of the  defendant in error, the court made a decree, ascertaining  the sums

to which the widow, and the distributees were severally entitled. Subsequently, a motion was submitted to the court, by two of the distributees, acting for themselves and the other distributees, to amend the judgment *nunc pro tunc*, by the record, and for the rendition of decrees for the proper amount. The orphans' court refused to amend the decree, which is the matter now assigned for error.

The error insisted on in this court, was, that the judge of the orphans' court, in ascertaining the share of the widow, gave her the benefit of advancements made to the children, and which they had brought into hotchpot. The record disclosed all the facts on which the settlement was based.

A. GRAHAM, of Greene, and HALE, for the plaintiffs in error.

1. The distributive share of the widow is not increased by the children bringing the advancements made to them into hotchpot; she is only entitled to her share of the personal property of which her husband died possessed; exclusive of the advancements made. 1 Eq. Cas. Ab. 155, § 6, 7; 2 Id. 270, § 29; 2 Williams on Ex'rs, Am. ed. 1070; Lord Kircudbright v. Lady Kircudbright, 8 Vesey, 64; Lawton's Case, 3 Desaussure's Rep. 199; Stearns v. Stearns, 1 Pick. 157; Brunson v. Brunson, 1 Meigs's Tenn. Rep. 630; Clay's Dig. 173, § 4; Id. 197, § 25-6; Id. 191, § 1.

2. When the court rendering a judgment, refuses to correct an error apparent on the record, this court will correct the error at the defendant's cost.

J. B. CLARK, for the defendant in error.

1. The share of the widow was one fifth of the whole personal estate after the advancements were brought into hotchpot. Clay's Dig. 173, § 4; Ib. 197, § 25; 1 Rev. Stat. of No. Ca. 615, § 12; Ib. 368-9, § 1 and 3; 2 Wms. on Ex'rs, 906-7, 918; Davis v. Duke, No. Ca. Conf. R. 439, Lib. ed.; Littleton v. Littleton, 1 Dev. & B. Law R. 327.

2. An improper allowance to one of the distributees in the orphans' court, cannot be corrected on error unless excepted to in that tribunal.

COLLIER, C. J.—The first question presented for our

consideration is, whether the distributive share of the widow is increased by the advancements of the children of the intestate, which were brought into hotchpot. It is provided by the act of 1826, that where the husband dies intestate, or there shall be no satisfactory provision made for the widow by will, she shall share in the personal estate, as follows: "If there be no children, or if there be but one child, she shall be entitled, out of the residue left after paying the debts of the deceased, to one half: if there be more than one child, but not more than four, in that case she shall be entitled to a child's part; but if there be more than four children, then, and in that case, she shall be entitled to one fifth part in absolute right." Clay's Dig. 173, § 4. The act of 1822, "concerning intestates' estates," enacts that "when any of the children of a person dying intestate, shall have received from such intestate in his or her lifetime, any real or personal estate by way of advancement, and shall choose to come into the partition of the estate with the other parceners, such advancement, both of real and personal estate, or the value thereof, shall be brought into hotchpot with the whole real and personal estate descended, and such party bringing into hotchpot such advancement as aforesaid, shall thereupon be entitled to his, her, or their portion of the whole estate so descended, both real and personal." Clay's Dig. 197, § 25. By the act of 1828, "concerning the estates of deceased persons," it is provided how property brought into hotchpot shall be valued, and declared that in all cases, the value of the property at the time it was delivered, shall be the standard of value; "and the value so fixed, or the value agreed upon by the parties, shall be deducted from the share of such heir or heirs." Ib. § 26.

The English statute of distributions of 22 and 23 Car. II, c. 10, prescribes the manner in which the estate of a person dying intestate shall be distributed between his wife and children, or the representatives of his children, and provides that advancements made to any of the children by the intestate, shall be taken into the account, if those thus advanced shall claim a share in the estate, so as to make the portions allotted to the children, or their representatives, equal as near as may be. 2 Wms. Ex'rs, 906. It is said, "the end and

intent of the statute was to make the provision for all the children of the intestate equal, as near as could be estimated." And "it may not be amiss to observe, that with regard to goods and chattels, this is part of the ancient custom of London, of the province of York, and of the sister kingdom of Scotland : and with regard to the lands descended in coparcenary, that it has always been, and still is, the common law of England, under the name of *hotchpot.*" 2 Id. 917, 918. Under this statute, it has been held, that a child advanced in part, shall bring in his advancement only among the other children : for no benefit shall accrue from it to the widow. Id. 919, 949; 2 Step. Com. 255; 8 Ves. Rep. 51.

Under the statute of South Carolina, for the abolition of the rights of primogeniture, and the equitable distribution of intestates' estates, it has been decided that the widow is not entitled to the benefit of an advancement made by a father to a child, and which the latter brings into *hotchpot,* but it is only to be taken into the account in adjusting the shares of the children. The court said that by a recurrence to the act, it will be found, that the rights of the widow are confined to the property left by the intestate husband. The words of the act are, "that when any person possessed of, interested in, or entitled to real estate in his or her own right in fee simple, shall die without disposing thereof by will, the same shall be distributed in the following manner: first, if the intestate shall leave a widow and one or more children, the widow shall take one third of the said estate, and the remainder shall be divided between the children, if more than one : but if only one, the remainder of the estate shall be vested in that one absolutely forever." The same provision is extended to the personal estate of intestates. It is added, that the act is clear and distinct. "The widow is to take a third of whatever estate the intestate is possessed of, interested in, or entitled to, at the time of his death, and no more or other estate. Nor does the first recited clause, making provision for the case of children who had been advanced, have any relation to the widow : that was intended merely as a rule of equalization among the children. The widow is to take, in all events, a third of what is left, and the children

the remaining two thirds." *Ex parte* Lawton, 3 Dess. Rep. 199.

The statute of Virginia of 1785 provides, " where any of the children of the intestate, or their issue, shall have received from the intestate in his lifetime, any real estate by way of advancement, and shall choose to come into partition with the other parceners, such advancement shall be brought into hotchpot with the estate descended." Another enactment of that State directs, " that where any children of the intestate, or their issue, shall have received from the intestate in his lifetime, any personal estate by way of advancement, and shall choose to come into the distribution with the other persons entitled, such advancement shall be brought into hotchpot with the distributable surplus." Judge Tucker was of opinion that these statutes must receive the same construction as the English statute, and the widow could not claim any benefit from the advancements to the children brought into hotchpot; notwithstanding the expressions in the Virginia acts referring to the advanced child coming into partition with the other parceners and distributees. 2 Lomax on Ex'rs, 213, § 14; 1 Tucker's Blacks. pt. 2 p. 176.

The statute of North Carolina, passed in 1784, provides for children partially advanced in the lifetime of their deceased parent, bringing into hotchpot their advancements if they wish to share in the distribution, and entitles *in totidem verbis* the widow to a "child's part," "equally with all the children;" unless there be more than three children, in which case she shall be entitled to one third of the personal estate, &c. This enactment, it has been held, should receive a construction different from that of *Charles the Second;* that it extends to the widow the principle of equality which was before confined to the children, and in all cases where there are two or more children, entitles her to share the personalty equally with them. This was considered evident from the expression, a "child's part," which, *ex vi termini*, imports as large a share as is allotted to any child. No. Caro. Conf. Rep. 439; 1 Dev. & Bat. Law Rep. 327.

It must be conceded, that the statute of North Carolina, in respect to the share of the widow, is expressed in terms in

83

some respects dissimilar to the 22 and 23 Charles. In the opinions of its highest court, which expound it, there is much force, and we have no inclination to find fault with the reasoning employed. We would however remark, that the same statute was differently interpreted by the supreme court of Tennessee in Brunson v. Brunson, Meigs's Rep. 630.

Our act of 1826, we have seen, declares the widow's share in the estate of her deceased husband, which shall be left after the payment of his debts, and the previous statutes of distribution of 1806 and 1812, only operated upon the surplus. The statute of 1822, which we have cited, only requires the children of the intestate to bring their advancements into hotchpot, where they "shall choose to come into the partition of the estate with the other parceners." What is said in the act of 1826 in respect to the widow being entitled to "a child's part," where there are not more than four children, is restricted by the preceding part of the section, to "a child's part," or in other words, to one fifth of the decedent's estate which may remain subject to distribution after his debts are paid. This conclusion is not attained by an application of the principles of construction, but is the clear result of the language employed.

The act of 1822 was doubtless borrowed from the statute of Virginia, which seems never to have received a judicial exposition by the court of appeals of that State. But the well deserved reputation of Judge Tucker, both as a man and a jurist, induces us to think that the practical interpretation of the statute referred to, has conformed to what he supposed should be its legal construction.

The term "parcener," which is an obsolete term in our jurisprudence, was doubtless inserted in our act without any definite or precise view, but merely because it had been previously used in the Virginia statute. By parceners, according to the English law, are meant the daughters of a man or woman seized of lands and tenements in fee simple or fee tail, on whom, after the death of such ancestor, such lands and tenements descend. 2 Bouvier's L. Dic. 261. See also 1 Step. Com. 319. An analogical, as well as critical, interpretation of the words "other parceners," in the connection in which they are found, evidently mean the other children of

the intestate, or those representing them, who have not received advancements, and with whom those advanced come in, to share in the distribution. The term "other," anteceding "parceners," can refer to no other object than "children;" and we therefore conclude that "parceners" was used as the synonyme with "children." If this conclusion was regarded as at all doubtful, the aid of analogous statutes, and the interpretation they have received, both in this country and England, we have seen might be successfully invoked to strengthen it. We will not extend our remarks on this point; for if we are to follow the light of precedent, we are constrained to conclude, that the widow can claim nothing from advancements made by her husband to his children. See 1 Pick. Rep. 157.

It is insisted for the defendant in error, that as the distributees did not except to the decision of the orphans' court, which gave to the widow of the intestate the benefit of the advancements to the children, they cannot avail themselves of it as an error here. The fact is explicitly shown in the decree by which the intestate's estate was distributed and the administration settled; and this being so, we have repeatedly held that no formal exception was necessary to authorize the appellate court to revise an error apparent in the final action of the orphans' court. Where the record discovers no express or implied waiver of an irregularity, it cannot be intended, that the judgment or decree was made by consent.

We might perhaps lay out of view the fact that the distributees, or some of them, moved the orphans' court to correct its decree in the particular complained of, and that this motion was overruled before the writ of error was sued out. For we are inclined to think, that the error noticed is not a clerical misprision, which the party aggrieved should have sought to have corrected in the primary court, before he appealed to a higher tribunal for redress.

We have but to add, that the decree of the orphans' court is reversed, and the cause remanded.