## MORTON *vs.* BRADLEY.

30 683
115 190

[ACTION UNDER CODE TO RECOVER DAMAGES FOR KILLING SLAVE.]

1. *Overruling demurrer to bad plea is reversible error.*—The overruling of a demurrer to a bad plea is an error which will work a reversal of the judgment, notwithstanding there were other good pleas to the entire action, unless the record shows that the finding of the jury was not based on the bad plea alone.

2. *Agent's authority to do illegal act, and liability therefor.*—A principal cannot delegate to his agent authority to do an illegal act; but, having given such authority, he cannot take advantage of his own wrong, and hold the agent liable for the consequences of such illegal act; yet this principle cannot be invoked by a third person, who was employed by the agent to assist in the illegal act, and who is liable to the principal for the consequences.

3. *Homicide of fugitive slave resisting apprehension.*—No one has a right, in attempting to arrest a runaway slave, to kill him to prevent his escape; yet, if the slave resists apprehension, or presents a hostile attitude, the captor is not bound to desist from or abandon the arrest, but may press forward in the prosecution of his purpose; and in the further prosecution of that purpose, after using all reasonable available means at hand to effect the arrest without injury to the slave, he may lawfully take the slave's life under circumstances which would render any other homicide justifiable on the ground of self-defense.

APPEAL from the Circuit Court of Pickens.

Tried before the Hon. S. D. HALE.

THIS action was brought by John Morton against John Bradley, to recover damages for the killing of a slave; and was commenced in October, 1854. The sufficiency of the complaint was determined on a former appeal.— See 27 Ala. 640. The defendant interposed seven pleas in bar of the action; to the third, fourth, and fifth of which, demurrers were sustained. The other pleas, on which issue was joined, were as follows:

"1. He denies all the allegations of plaintiff's complaint.

"2. He is not guilty in manner and form," &c.

"6. That said slave, at the time said complaint alleges that defendant shot and killed him, was a runaway, and in dire rebellion in said county; that defendant, while

said slave was so in rebellion and run away, joined with others in pursuit of him, for the purpose of apprehending him; that while in such pursuit, defendant came up with said slave, and found him armed with a deadly weapon; that defendant, when he so came up with said slave, so armed, commanded him to surrender, but said slave refused to do so, and, with said deadly weapon, endangered defendant's life, and resisted being taken; that defendant, while said slave was thus armed, and refusing to surrender or be taken, and while said slave so endangered defendant's life with said deadly weapon, shot and killed him in his own necessary self-defense; and that this is the shooting and killing complained of," &c.

"7. That said slave, at the time said complaint alleges that defendant shot and killed him, was a runaway in said county, and was a dangerous slave, armed with a deadly weapon; that plaintiff, while said slave was so run away, employed one James H. Holbert to apprehend and capture said slave, and to use all the necessary means for that purpose, and instructed said Holbert, if said slave resisted being taken, to take him dead or alive, and to shoot and kill him if he could not otherwise be taken; that said Holbert, acting under the authority of said plaintiff, went into pursuit of said slave; that said slave, with a dangerous and deadly weapon, resisted being taken by him, and it was necessary, as a means of apprehending and capturing said slave, that said Holbert should have assistance of men and arms; that said Holbert therefore, acting under such authority and instructions of said plaintiff, requested defendant to aid and assist him in capturing said slave, and communicated to him the authority and instructions which said plaintiff had given him; that defendant thereupon did assist said Holbert in endeavoring to apprehend and capture said slave, and came up with said slave, who was armed with a deadly weapon, and thereupon resisted being taken, and, brandishing said weapon at defendant, refused to be taken, and could not be taken without being shot; that said defendant thereupon shot him, to prevent his escape, and, un-

fortunately, killed him; and that this is the shooting and killing complained of," &c.

All the evidence in the cause is set out in the bill of exceptions; but, as no question is here raised concerning it, it requires no particular notice.

"On the defense set up by the seventh plea, the court charged the jury as follows: If the jury believe from the evidence that plaintiff made Holbert his agent to go and arrest said slave, and, at the same time, instructed him to use all the means requisite and necessary to do so, and, if he could not take him without it, to shoot and kill him; and that the assistance of any person was necessary to [enable] Holbert to take and arrest said slave; and that Holbert requested defendant to go with him to take said slave, and told defendant what his authority from plaintiff was, and gave the same instructions to defendant; and that defendant thereupon went with said Holbert, and found said slave, and could not take or arrest him without [killing him], and killed him,—then plaintiff cannot recover. But, if the jury believe from the evidence that plaintiff authorized Holbert to go and take said slave, and to use all means necessary to do so,—that the law would construe this language to mean all lawful means; and that if Holbert, or defendant under the authority and instructions of Holbert, exceeded the authority thus given by plaintiff to Holbert, then plaintiff would not be bound by their acts, but would be entitled to recover."

The court further instructed the jury, at the request of the defendant, "that if they believed from the evidence that plaintiff employed Holbert to hunt for said slave, and authorized him to take the slave by some means, or to use the necessary means to take him, and to kill him if he could not otherwise be taken, or to take him dead or alive,—then Holbert had a right to employ defendant to assist him in taking the slave, if assistance was necessary; and therefore, if the jury believe from the evidence that the facts stated in the seventh plea are true, they must find for the defendant."

The plaintiff excepted to each of these charges, and requested the court to instruct the jury as follows:

"1. If the jury believe from the evidence that plaintiff employed Holbert, as his agent, to hunt and arrest said slave, and to use all means necessary for that purpose, and to shoot and kill him if he resisted,—that an effort of the slave to escape by fleeing, even with a dangerous weapon in his hands, was not such resistance as authorized his shooting and killing, unless the pursuer, or some other person, at the time of the shooting, was in danger of bodily harm from the slave.

"2. If the jury believe from the evidence that the plaintiff employed Holbert, as his agent, to hunt and arrest said slave, and to use all necessary means for that purpose, and to shoot and kill him if he resisted,—that Holbert, by such employment, was a special agent, and if the power to use all necessary means for the purpose of arresting the slave authorized him to call other persons to his assistance for the purpose of arresting the slave, it did not give him any power to authorize such other person to shoot and kill the slave; and if they believe from the evidence that Holbert requested the defendant, with several others, to assist him to hunt and arrest the slave, and that defendant, while rendering such assistance, shot and killed said slave, when it was not necessary to do so to save himself or some other person from bodily harm, but to prevent the escape of the slave,—then plaintiff is entitled to a verdict.

"3. If the jury believe from the evidence that Holbert only had authority from plaintiff to shoot the slave if he resisted, and that he had authority to delegate the same power to defendant; yet, to authorize defendant to shoot or kill the slave, there must have been resistance on the part of the slave, and the refusal of the slave to stop when defendant ordered him was not resistance, nor was his continuing to run from defendant, if the evidence shows that he did so, resistance in law."

The court refused to give these charges, and the plaintiff excepted to each refusal.

A. B. CLITHERALL, for the appellant.—1. The seventh plea is bad, because it does not set out any legal justifica-

Morton v. Bradley.

tion for the killing of the slave.—1 Nott & McCord, 182; 3 Iredell, 513; Thompson v. Young, Miss. Reports, in MSS.; 3 Porter, 424; Eskridge v. The State, 25 Ala. 36; Dave v. The State, 22 Ala. 33; 5 Rich. 44.

2. The license from plaintiff, alleged in said plea, is void, because the authority thereby given is unlawful, and, consequently, neither concludes the plaintiff, nor justifies or excuses the defendant.—Story on Agency, § 11; 5 Co. 80; 1 Livermore on Agency, 14–23; Buller's N. P. 17; 1 Hawks, 420.

3. But, if the license is not void, it can only avail in mitigation of damages.—Boling v. Wright, 16 Ala. 666; 1 Stew. 478. Hence, as a plea in bar of the entire action, the defense is bad.

4. The license was given to Holbert only. It was a personal trust, and could not be delegated by him to another.—Story on Agency, § 13; 9 Co. 476; 4 Camp. 184; 9 Vesey, 251–56; Co. Litt. 112; 4 Mass. 597; 15 Pick. 302; 1 Hill, 501; 26 Wendell, 485; 1 Ala. R. 258; 1 American Leading Cases, 562–67; Paley's Agency, § 176.

5. The charge of the court was erroneous, for the reasons urged against the seventh plea, and because it was a charge "on the effect of the testimony."—Code, § 2274.

6. The second charge is erroneous, because it authorized the jury to infer that Holbert could delegate his authority.

7. The charge given at the defendant's request is based on the seventh plea, and is obnoxious to the same objections.

8. This court cannot intend, for the purpose of avoiding a reversal, that the verdict of the jury was based on the sixth plea. The verdict is general. The sixth plea, as shown by its date, was an afterthought, and was not sustained by the testimony.—The State v. Brantley, 27 Ala. 44.

T. REAVIS, and S. F. HALE, contra.—1. Section 1023 of the Code authorizes any person to apprehend a runaway slave, and provides for the payment of a reward for doing

so. For that purpose, this statute necessarily arms every person, attempting to do so, with all the power necessary to accomplish that object, and, at least, with all the power of the slave's owner. This power is the employment of such means, and so much force, to any extent, as will be effectual to subdue the slave.—Dave v. The State, 22 Ala. 23 ; Nelson v. Bondurant, 26 Ala. 341 ; Dearing v. Moore, 26 Ala. 590.

2. The plaintiff's directions to his agent authorized the latter to obtain the assistance of the defendant in capturing the slave, and to confer upon him all the power which he himself had, in respect to shooting the slave, if he could not otherwise be taken ; and if they did not, under the facts alleged in the plea, and assumed in the charges, the defendant is not liable to the plaintiff, for acting in pursuance of his agent's instructions.—Story on Agency, § 14; Wilcox v. Routh, 9 Sm. & Mar. 476; McClung v. Spotswood, 19 Ala. 165.

3. The seventh plea shows a complete justification, both on the ground of a license from the plaintiff to shoot the slave, and a license of the law; and the license is properly pleaded as a justification.—Bradley v. Flewitt, 6 Rich. 69 ; Watson v. Hamilton, 6 Rich. 75 ; Hendrix v. Trapp, 2 Rich. 93 ; Smith v. Hancock, 4 Bibb, 222 ; Pierce v. Myrick, 1 Dev. Law R. 345 ; McClelland v. Kay, 4 B. Monroe, 103 ; Allain v. Young, 9 Martin's La. R. 221 ; Dearing v. Moore, 26 Ala. 590.

4. If the plaintiff, in effect, licensed the defendant to shoot the slave if he could not otherwise be taken ; and the defendant could not, as between him and the plaintiff, lawfully execute the authority, the plaintiff was a wrong-doer in giving the license, and the defendant may justify under it; otherwise, the plaintiff would be allowed, in violation of well-known maxims, to take advantage of his own wrong, and to maintain an action where he consented to the act which occasioned his loss.—Broom's Legal Maxims, (50 Law Library,) 127, 317.

5. The second and fourth charges requested by the plaintiff, were properly refused, because they were predicated upon a part only of the evidence of resistance, and with-

drew the rest from the consideration of the jury.—Reese v. Beck, 24 Ala. 651; Ward v. Winston, 20 Ala. 167; Godbold v. Blair, 27 Ala. 592.

6. But, if the demurrer to the seventh plea should have been sustained, and the charges given by the court were wrong, and the charges requested by the plaintiff ought to have been given; still, the record shows that the plaintiff has not been injured by any of these errors. The sixth plea, in relation to which charges were given and not excepted to, alleged that the killing was in self-defense; the jury found a general verdict, on all the pleas, for the defendant; and the evidence, all of which is set out in the bill of exceptions, fully authorized the verdict on that plea. It is an established rule of this court, that every reasonable intendment will be made in favor of the affirmance of the judgment below.—Greene v. Tims, 16 Ala 541; Bumpass v. Webb, 3 Ala. 109; Morrison v. Morrison, 3 Stewart, 444, and many other cases. Upon this principle, where there is a general verdict, upon good and bad counts, the verdict will be presumed to be upon the good counts.—Harrison v. Cassity, Minor, 291; Brown v. Torver, Minor, 370; and other cases cited in Reavis' Digest, 408, § 356. Upon the same principle, a general verdict, upon good and bad pleas, will be presumed to be upon the good pleas.—State v. Brantley, 27 Ala. 44; Worford v. Isbell, 1 Bibb, 247; Wallace v. Barlow, 3 Bibb, 168; State v. Hood, 7 Blackf. 127. The plaintiff, therefore, has not been injured by any of the rulings of the court, even if erroneous; and this court will not reverse for error, without injury, especially where it appears from the whole record, as it does here, that the verdict and judgment are just and right.—Jones v. Graham, 24 Ala. 450; Smith v. Awbrey, 19 Ala. 63; Brantley v. Carter, 26 Miss. 282.

E. W. PECK, in reply.—1. The authority averred in the seventh plea to have been given to Holbert, did not authorize him to shoot the slave, unless he resisted. It was, moreover, personal and confidential; and, consequently, could not be delegated to a stranger. Nor does the plea

allege that this authority was delegated by Holbert to the defendant, but only that Holbert "communicated" to defendant the instructions and authority given to him. Neither does the plea allege that the defendant shot the slave because he resisted, but that he shot him to prevent his escape.

2. The first charge given by the court is erroneous, 1st, because it is not warranted by the evidence; 2d, in instructing the jury that Holbert, if his authority from plaintiff was to shoot and kill the slave if he could not otherwise take him, had power to delegate his authority to defendant; and, 3d, in instructing the jury that the defendant might lawfully kill the slave, if he could not otherwise take him.

3. The first charge given at the instance of the defendant, is erroneous, if the seventh plea is bad ; and it is erroneous because not authorized by the evidence.

4. The charges asked by the plaintiff, ought to have been given. If the slave, at the time he was shot, was merely endeavoring to effect his escape by flight; and neither the defendant, nor any other person, was in danger of bodily harm ; and the killing was to prevent his escape, then the first and second charges should have been given. If Holbert had authority to shoot the slave in the event of his resistance, and might lawfully delegate that authority to the defendant; yet, if an effort on the part of the slave to escape by flight does not amount to resistance in law, the third charge ought to have been given. A mere effort to escape by flight is not resistance in law—the two are essentially different things.

WALKER, J.—It is contended for the defendant, that notwithstanding the seventh plea may have been bad, the overruling of the demurrer to it was error without injury. It is conceded, upon the authority of the case of The State v. Brantley, 27 Ala. 44, that a plaintiff will not be regarded as having been injured by the overruling of a demurrer to a bad plea, if there are one or more other pleas to the entire action which are good, and if issues of fact upon *all* the pleas have been found in favor of the defendant.

Morton v. Bradley.

Perhaps it may hereafter be found necessary to restrict the rule, so as not to include a case where the testimony clearly authorized a verdict for the defendant only on the bad plea.

In this case, it does not clearly appear that all the issues were found for the defendant, or that the issue upon any good plea was found for him. The verdict was, "We, the jury, find for the defendant." Whether this finding for the defendant was the result of the determination of the issues upon all the pleas, or of the issue upon only one, does not appear. The jury may have found for the defendant, and yet found the issue upon all the good pleas in favor of the plaintiff. The verdict may have been based upon a finding of the issue on the bad plea alone in favor of the defendant.

The established practice in this court is to reverse for error, unless it is clearly shown to have been harmless.— Foust v. Yielding, 28 Ala. 658; Elmore v. Mustin, *ib.* 309. It is too plain for argument, that an error in overruling the demurrer to a plea is not clearly shown to have been harmless, where, as in this case, the record does not disclose whether the finding of the jury against the plaintiff was not based upon the bad plea alone; and herein this case differs from The State v. Brantley, *supra.*

The seventh plea presents the following facts, as a defense to an action by the owner, to recover the value of a slave, killed by the defendant: The master of a dangerous runaway slave, who was armed with a deadly weapon, employed another to capture him, and instructed his employee, *"if the slave resisted being taken, to take him dead or alive, and to shoot and kill him, if he could not otherwise be taken."* The slave, with a dangerous and deadly weapon, "resisted being taken" by the agent of the master, when by him pursued; and it was necessary, as a means of capturing the slave, that he should have the assistance of men and arms. The defendant then, by the request of the master's agent, went to assist him in the capture of the slave, having been informed of the instructions given by the owner to his agent. The defendant, while assisting the master's agent, came up with the slave, who with

a deadly weapon "resisted being taken," "and, brandishing said weapon at the defendant, refused to be taken, and could not be taken without being shot; and *said defendant thereupon shot him, to prevent his escape, and, unfortunately, killed him.*"

Three arguments are made in support of this plea: 1st, That the authority of the owner to his agent, to shoot (and kill) the slave, if it were a *necessary* means of capture, was communicable to an assistant necessarily called by the agent to his aid in the business for which he was employed; and the assistant having shot the slave, in the contingency contemplated by the instructions of the owner, cannot be amenable in damages to the owner. 2d, That under the laws of this State, one who kills a runaway slave, because the resistance of apprehension with a deadly weapon by the slave renders it impossible to capture him otherwise, is not liable *civiliter* for the act. 3d, That one may shoot a runaway slave for the purpose of disabling him, when he cannot be otherwise arrested, without incurring a liability to the owner, if he should, contrary to his design, kill him ; and that the plea makes out such a case. We proceed to consider these arguments in their numerical order.

1. If the authority, given by the owner, to kill the slave if he could not otherwise be taken, was illegal, it is certain that no obligation to perform, and no liability for the omission to perform the illegal act, could result. There can be no delegation of authority to do an illegal act. But, upon a well-established maxim of law, it is not permitted to any one to take advantage of his own wrong; and, although the owner of the slave could not authorize another to commit an unlawful homicide, yet slaves are property as well as persons, and while the law will not excuse the killing of a slave, upon the ground that the slayer had the master's authority, the owner cannot be permitted to recover the value of his property destroyed by his direction. It does not follow, however, that because the owner is precluded from a recovery from him who acted under his instructions, the same protection could be transferred to another. The consent to the destruction

Morton v. Bradley.

of the property by one man, is not a consent to its destruction by another; and the consent that one man may destroy another's property, implies no authority to the former to employ assistants in the work of destruction, or to transfer his immunity from civil liability to another. The question of delegated authority does not arise. It is sufficient, as to this point, that the defendant had not the consent of the owner of the property that he might destroy it, and that that consent could not be given by another.

2. Our consideration of the first argument by the appellee has been upon the concession, that the conduct of the defendant, as described in the seventh plea, was illegal; and the inquiry was, whether the instructions of the owner of the slave, communicated to the defendant, did not preclude a recovery of damages for the killing of the slave, notwithstanding it was illegal. We are now to consider the question, thus far conceded for the sake of argument, whether the killing of the slave as described in the plea was illegal. It is a delicate and difficult duty, to designate the point at which the law, reconciling the claims of humanity and the necessity of subordination and subjection, permits the killing of a runaway slave, who resists apprehension; yet the exigencies of this case will not permit its evasion. Our law authorizes any person to apprehend, and carry before a justice, a runaway slave; and encourages the exercise of the authority, by providing a reward.—Code, § 1023. In the eye of that law, the apprehension of the fugitive slave by any white man is not only a lawful, but a meritorious act. The law allows an officer, in lawful pursuit of a felon, to kill him, if necessary to prevent his escape by flight.—1 East's C. L., 300; 4 Bla. Com. 180. The courts have abstained from the extension of this rule, to the capture of fugitive slaves. The necessity of immediate arrest, the detriment from the temporary escape of a runaway negro, and the policy of the society in which slavery is an element, have not been supposed to forbid the adoption of a less stern rule in reference to the apprehension of fugitive slaves; a rule bending more to the claims of humanity, somewhat soft-

ened by compassion for the slave, and more consistent with the interests and rights of the owner of the property.

The killing of a runaway slave, merely for the purpose of preventing his escape, is not permitted. It results, however, from the fact that the apprehension of a slave is a lawful and meritorious act, that any person may press forward in the prosecution of the object of making the arrest, without regard to the perils which the menaced or actual resistance of the slave may present; that he is not bound to desist, because the slave presents a hostile attitude, or because the circumstances indicate that, in the prosecution of the object, the killing of the slave will become the necessary means of protection to him who is seeking to make the arrest. At the point of time when one, lawfully and properly endeavoring to make the apprehension, is placed, or will be placed if he further advance in the prosecution of his design, in that condition which would make a killing homicide in self-defense, he must be permitted to take the slave's life. The law does not require him to retreat, or abandon the object, but encourages him to press forward. When there are no other available means for the arrest at hand, and the alternative arises in which he can no further carry forward the business of arresting the slave without imminent peril to himself, or the presence of circumstances which create a reasonable belief of such peril, he may kill him. To hold that, in such contingency, he must desist or retreat, would render impossible the apprehension of a slave bold or desperate enough to make dangerous resistance, and would establish a principle fatal to the subordination and government of the slave population. All the foregoing definitions of the contingency in which the homicide of a runaway slave is permissible must, however, be taken with this qualification, that before resorting to extreme measures, the captor must use all reasonable available means at hand, to effect the arrest, without injury to the slave. Humanity and common prudence alike forbid that one should be permitted, unnecessarily and improperly, to produce the alternative in which the killing of

the slave would be necessary, when the object can by available means at hand be otherwise accomplished.

In the recent case of John J. Thompson v. William Young, decided by the high court of errors and appeals of Mississippi, a transcript of which has been furnished to us, the following language is used in reference to the same question which we are considering: "The statute expressly confers the right, and the policy of the country makes it the duty of every citizen, to arrest a runaway slave. It follows, therefore, necessarily, that if any person, in essaying to capture a runaway, shall meet with resistance, he may lawfully oppose force to force. He may even justifiably, in such case, slay the resistant, if the resistance offered be of such a character as to threaten imminent danger to the life, or great injury to the person of the captor. These rules are essential to the good government of the slave population, and necessary to the safety of the community. The laws for the government of slaves should be enforced firmly and wisely, and, of course, without unnecessary severity. The law is careful of the safety of the slave, within his prescribed sphere. Regarded in the two-fold aspect of persons and of property, the same law which protects the master, guards their rights as persons It would hence be no justification of the homicide of a runaway, that he was slain by the captor in an effort to avoid an arrest by flight. For the same reason, a person, in an attempt to arrest a runaway who offered resistance, would not be justified in taking the life of the slave, unless by such resistance his own person or life were put in imminent danger."

We quote thus copiously from the case above cited, because the views therein expressed, though requiring modification to make them correspond with our opinion of the law, in the main support the conclusions we have attained. We cite, also, the following decision from another State, where slavery exists, in maintenance of the positions laid down by us: Witsell v. Earnest & Parker, 1 Nott & McC. 182. See, also, the following decisions by this court: Dave v. The State, 22 Ala. 23; Eskridge

v. The State, 25 Ala. 30; Nelson v. Bondurant, 26 Ala. 341; Dearing v. Moore, *ib.* 586.

The seventh plea does not show that the killing of the slave was under the circumstances which we have above decided to be necessary to make it lawful. It says that the negro, with a deadly weapon, resisted being taken, and, brandishing the weapon at the defendant, refused to be taken, and could not be taken without being shot; and that the defendant thereupon shot him. We can make no intendment in favor of the sufficiency of the plea. It does not show that the negro could not be taken without being shot, because of his resistance with a deadly weapon. It may be that the flight of the slave, after brandishing the weapon and refusing to be arrested, was the reason why shooting was necessary to his apprehension. But, under the principles stated, we should hold the plea insufficient, even if it did aver that the slave, because of his resistance with a deadly weapon, could not have been arrested without being shot. The captor, in the prosecution of the arrest, must have been brought into peril, before the killing could be permissible; or he must have prosecuted the purpose of arrest, to a point where a further prosecution of the object would be attended with imminent peril to his life or person, or by circumstances which would create a just apprehension of such peril.

We decline to consider the question raised in the last of the three arguments hereinbefore stated, because it is not raised by the plea. The plea does not show that the defendant shot with the intention of simply disabling the slave. That he *unfortunately* killed the slave, does not mean that he killed him by chance, or accident, when he was simply aiming to disable him.

The seventh plea, upon the principles laid down in this opinion, did not set forth a defense to the action; and the demurrer to it should have been sustained.

The ruling of the court upon the demurrer to the 7th plea, and the charges given and refused, are the only matters assigned for error. All the questions presented by the several charges given and refused are decided by

us in passing upon the 7th plea, and it is unnecessary to notice them.

The judgment of the court below is reversed, and the cause remanded.