| 35 | 683 |
| 96 | 415 |
| 35 | 683 |
| 114 | 104 |

## GOGGINS vs. SMITH'S ADM'R.

[ACTION ON PROMISSORY NOTE, BY ENDORSEE AGAINST ENDORSER.]

1. *Error without injury in sustaining demurrer to special plea.*—The sustaining of a demurrer to a special plea, if erroneous, is error without injury, when the record shows that the defendant had the full benefit of the same defense under his other pleas; and hence the appellate court will not inquire into the sufficiency of such special plea.

2. *Statutory liability of endorser of note not negotiable.*—Under the statutes of this State, (Code, §§ 1543–46,) which substitute a suit against the maker, for the demand and notice required by the commercial law, as necessary to fix the liability of the endorser of a note not payable in money at a bank or private banking-house, the holder is excused from bringing such suit against the maker, when the latter " has no known place of residence in the State," although he is here temporarily on a visit.

APPEAL from the Circuit Court of Talladega.
Tried before the Hon. NAT. COOK.

THIS action was brought by John C. Smith, (and after-. wards revived in the name of his administrator,) against Samuel Goggins; was founded on a promissory note for $750, executed by one A. M. Presley, dated the 8th July, 1857, payable to the defendant by the 25th December next after date, and assigned by the defendant to the plaintiff; and was commenced on the 27th February, 1858. The complaint alleged, that on the 25th December, 1857, and continuously from that time up to the commencement of the suit, the maker of the note had no known place of residence in this State. ˙ The defendant pleaded—1st, the general issue; 2d, that when the note became due, and from that time up to the commencement r ˙ ˙his suit, the maker of the note had a known place of residence in Chambers county in this State, and, with ordinary diligence, might have been sued; 3d, that the maker of the note, during all the time aforesaid, held and owned property in said county, of value more than sufficient to pay and satisfy said note; 4th, that defendant notified and requested plaintiff to bring suit on said note against the maker, while the latter was thus residing in said county, and that the plaintiff refused to do so, although the maker offered to accept service of a summons; 5th, that the maker of the note, during the time aforesaid, held and owned property in said county, of value more than sufficient to pay and satisfy said note, and that said property remained continuously in said county until after the adjournment of the circuit court held next after the maturity of said note; and, 6th, another special plea, averring all the facts stated in the 2d, 3d, and 4th pleas. The court sustained a demurrer to the 3d, 4th, 5th, and 6th pleas, and issue was joined on the others.

" On the trial," as the bill of exceptions states, "the plaintiff read in evidence the note declared on, with its endorsement, and then offered evidence tending to show that, for many years prior to September, 1857, A. M. Presley, the maker of said note, resided with his family

in the town of LaFayette in said county, where the plaintiff also resided; that about the last of September, or first of October, 1857, said Presley sold out his residence and other property there, broke up house-keeping, and removed with his family and slaves from this State; and that he had not kept house, or had a known place of residence in this State, since that time. The plaintiff having here rested his case, the defendant offered evidence tending to show, that said Presley, after removing with his family, returned to LaFayette, and was there from about the time when said note fell due, until after the first Monday in February, 1858, temporarily settling up his business, and openly and publicly attending to his business; and that plaintiff knew said Presley was there during the period aforesaid. The defendant further proved, that said Presley, while thus in Chambers county, went to plaintiff, and offered to acknowledge service of a writ returnable to the then next term of the circuit court of said county; that plaintiff refused to issue a writ,—saying, that his lawyers told him he could get it out of this defendant; that while Presley was thus in said county, he had property there of value sufficient to pay said note; and that defendant notified plaintiff of the fact, and requested him to sue said Presley, and promised that he would immediately pay up whatever deficit might be ascertained.

" On this state of facts, the defendant requested the court to instruct the jury, ' that if they believed from the evidence that said Presley, at the making of said note, and for many years prior thereto, resided in LaFayette in said county, and continued to reside there until the latter part of September, or the first of October, 1857, and then sold out his house and furniture, and removed his family from the State, and then returned himself to said county about the time of the maturity of said note, and remained there openly until after the first Monday in February, 1858,—then, it was the plaintiff's duty to have sued him on said note.' This charge the court refused to give, and instructed the jury, instead thereof, ' that if the evidence satisfied their minds that the foregoing facts were true,

then the plaintiff was not bound to sue Presley, and could recover the amount of said note of this defendant, without first bringing suit against Presley.' The court also charged the jury, at the instance of the plaintiff, 'that if they believed from the evidence that Presley, the maker of said note, removed from this State about the first of October, 1857, and has never had a place of residence in this State since that time, although he may have returned on a temporary visit, and might have been sued to the first court after the note became due,—they must find for the plaintiff, for the amount of the note and interest.'"

The refusal of the charge requested, and the charges given, to each of which an exception was reserved by the plaintiff, together with the sustaining of the demurrer to the 3d, 4th, 5th, and 6th pleas, are now assigned as error.

ALLISON & ANDREWS, for appellant.

BROCK & BARNES, *contra*.

STONE, J.—The defense set up in the 3d, 4th, 5th and 6th pleas, was available under the 1st and 2d pleas. Further, in this case the defendant actually introduced in support of the latter the evidence he relied on to sustain the former pleas. Having the full benefit of the entire defense he could have made, had the demurrer to his 3d, 4th, 5th and 6th pleas been overruled, it is manifest, if the court erred in sustaining the demurrer, it was error without injury. Hence, we will not inquire whether either of those pleas tendered a valid defense.—Shep. Dig. 568, §§ 93, 96; Powell v. Asten, at the present term. It is not our purpose, in what we have said above, to shake our former decisions on the question there presented. See Powell v. Asten, at the present term.

[2.] Section 1543 of the Code declares the general rule for fixing the liability of endorsers, "on all contracts assigned by writing, except bills of exchange, or other instruments, and notes payable in money, at a bank, or private banking-house, when the amount due is over fifty dollars." The rule thus laid down was evidently intended to supplant the old rule of demand and notice, as recog-

nized in the law-merchant. The effect of this section is to abolish demand and notice, as a means of fixing the liability of endorsers, except on bills of exchange, and notes and other instruments payable in money at a bank, or private banking-house. The rule substituted is, suit against the maker, to the first court to which suit can properly be brought, &c.

Section 1546 of the Code declares, that "the holder of such endorsed or assigned contract is excused from bringing the suit, obtaining the judgment, and issuing the execution thereon, when the maker has no known place of residence in the State." This language is clear and unmistakable. Its effect is to render the liability of the endorser primary and absolute, whenever the maker has no known place of residence in the State.

The language of the statute being clear and unambiguous, it is not for us to speculate about its meaning or spirit. One who resides without the State, but who was temporarily on a visit to this State, can, with no propriety, be said to have had a residence in this State.

The various rulings of the circuit court were in accordance with these views.

Judgment affirmed.

R. W. WALKER, J., yields to this opinion a reluctant assent.