## STEADMAN *vs.* STEADMAN.

[PETITION BY WIDOW FOR ALLOTMENT OF DOWER.]

1. *Right to dower of widow having separate estate; valuation of separate estate.*—In computing the value of a widow's statutory separate estate, on her application for dower in the lands of her deceased husband, (Code, § 1991; Revised Code, § 2380,) the value of her property at the time of the allotment of dower, and not at the death of her husband, must be taken; and consequently, where her separate estate consisted principally of slaves, which were emancipated, after the death of her husband, by the abolition of slavery in Alabama, their value is not to be estimated. (WALKER, C. J., *dissenting.*)

APPEAL from the Probate Court of Dallas.

IN the matter of the petition of Mrs. Mary B. Steadman, for an assignment of her dower in the lands of which her deceased husband, John Steadman, was seized and possessed at the time of his death. The petition was filed on the 2d April, 1866, and was finally heard, after several continuances, on the 11th March, 1867. The petitioner's right to dower was contested by the decedent's heirs-at-law, who filed an answer to the petition; in which they admitted the marriage of the petitioner with said John Steadman, his death, and his seizin during coverture of the lands described in the petition, as alleged; but denied that she was entitled to dower in the lands, "because, at the time of the death of the said John Steadman, she had a separate estate under the laws of Alabama, which, exclusive of the rents, income, and profits, and inclusive of the increase of slaves, was equal in value to her dower interest and distributive share in her husband's estate, estimating her dower interest in his lands at seven years' rent of said dower interest." The court sustained a demurrer to this answer, or plea, "because it does not show that said petitioner now has any separate estate, or that she had any

31

separate estate at the time of filing her said petition for dower;" to which ruling the defendants excepted.

"On the hearing of the petition," as the bill of exceptions states, "the plaintiff proved, that she married said John Steadman in the year 1859, and was his wife at the time of his death, which occurred in February, 1862; and that said John Steadman died seized and possessed of the lands described in the petition. The defendants then proved, that the said Mary B. Steadman, at the date of her said marriage with John Steadman, owned in her own right, and had in possession, a number of slaves, who, by virtue of her ownership and marriage, became her separate estate under the laws of Alabama; which estate she held, and had in possession as her separate estate, at the death of her said husband; and which was, at the death of her said husband, greater in value than her dower interest and distributive share in his estate at the date of his death, computing the value thereof under the rule prescribed by sections 1991 and 1992 of the Code of Alabama. The plaintiff then proved, that her separate estate consisted entirely in slaves; and that after the death of said John Steadman, but before the filing of her application for dower in this case, all of said slaves were emancipated by the State convention of Alabama, in September, 1865; and that she had no separate estate at the time of her said application, nor at the time of the trial. This being all the evidence, the court decreed, that the petitioner was entitled to dower in the lands described in her petition; to which ruling and decree the defendants excepted."

The sustaining of the demurrer to the answer or plea, and the final decree, are now assigned as error.

PETTUS & DAWSON, for the appellants.

J. R. JOHN, contra.

BYRD, J.—The appellee, at the death of her husband, had a separate estate, held under the Code, greater in value than her dower interest in, and distributive share of, the estate of her husband; computing the same by the rule prescribed in sections 1991 and 1992 of the Code, But the

only separate estate she owned at the death of her husband, or since, was entirely in slaves, who have since been emancipated, as held in the cases of *Smith (a freedman) v· The State*, decided at the January term, 1866, and of *Logan v. The State*, decided at the June term, 1867. The main question in this case is, whether the emancipation of the slaves of appellee, under the circumstances of this case disclosed by the record, exonerates her from accounting for their value, upon an application for dower. The Code does not fix the time at which the valuation of the wife's separate estate must be made, and has left that matter to be determined by judicial construction; and in doing so, it is our duty to follow the principles and analogies of the law. The question is one involving no inconsiderable interest and difficulty.

Where the husband sells and conveys lands, owned during coverture, and the alienee makes improvements upon the land, the widow is not entitled to dower in the improvements, but in the land according to its value at the time of alienation. Such we understand to be the law in this country, and in England.—*Barney v. Frowner*, 9 Ala. R. 901; *Beavers v. Smith*, 11 Ala. 200, and the authorities cited therein. If the heir makes improvements, after the death of the ancestor, and before the assignment of dower, the widow is dowable of the land and improvements; and if the value of the land is impaired after the death of the ancestor, and before the assignment of dower, she is dowable according to its value at the time of assignment, and not according to its value at his death, *at least* if such impairment is not caused by the negligent or willful conduct of the heir.—*Campbell v. Murphy*, 2 Jones' Eq. (N. C.) R. 357.

Under the statutes of distribution, the widow is entitled to a share of the personal estate of her husband; but the time at which the valuation is to be made, in order to ascertain the amount of her share, is not fixed by the statute; yet, it has been the uniform practice in this State, recognized by repeated decisions, to ascertain her distributive share according to the value of the personalty at the time of the distribution, and not according to its value at the death of the husband. It has been held by this court, that,

in ascertaining the distributive share of the widow, the court can not take into account the value of advancements made by the husband to any of his children.—*Logan v. Logan*, 13 Ala. 653. And so, too, upon the authority above cited, (2 Jones' Eq. R. 357,) dower should be assigned according to the value of the land at the time of assignment, where the husband dies in possession, and with the title vested in him, unaffected by any conveyance or incumbrance made by him.

If, then, the valuation of the land owned by the husband at his death, and of the personal estate, is to be estimated at the time of the assignment of dower and distribution of the personalty, for the ascertainment of her dower interest and distributive share ; it would seem to be just and reasonable, that the same rule should be held applicable as to the valuation of the separate estate of the wife under sections 1991 and 1992 of the Code.

Equality is said to be equity ; and in all cases of difficulty in the construction of statutes of this nature, this cardinal rule is of great service in the administration of justice. It may also be said, that there is equity in mutuality ; and in adjusting the correlative rights and duties pertaining to the social relations, such a rule, when wisely applied, greatly promotes the ends of justice, and the interests of society.

No general rule on the subject can be adopted, and invariably applied, without causing some inequalities ; and in particular cases, which are easily supposed, will work hardly. But this difficulty is inherent in the constitution of society and the transaction of human affairs ; and we have not yet reached that degree of perfection in the progress of improvement and the administration of law, when such difficulties can be reconciled without occasional injustice, or solved without apparent inconsistency. Hence, it is thought, that fixed rules, wisely applied, operate more equitably than uncertain and changeable ones, or such as may be adopted to suit the peculiarities of each case.

If, then, a widow is only entitled to her distributive share of the personalty according to its value at the time of distribution, it would seem to follow, that she is not entitled to

a distributive s'. are of property owned by the husband at his death, but wh ch has been lost or destroyed during the administration, without any fault of the administrator; and if it has, she must look to the administrator, and not to the remaining property, for satisfaction of her claim. If the husband owned slaves at his death, and before distribution they are set free by a power over which the personal representative had no control, and which he could not resist, the widow would have no right to have them valued, and have her dist.ibutive share of such value satisfied out of the other personal assets of the estate, or to a decree against the personal representative for such share. And, by parity of reasoning, and the analogies of the law, we hold that the widow should not be held to account for the value of her separate estate, which she owned at the death of her husband, and which she has lost, *without any negligence or fault on her part;* and for such as she is accountable, she should account according to the value thereof at the time of distribution of her husband's estate, or of the assignment of dower.

This question has never been before this court for decision; but, in the case of *Dubose v. Dubose,* (38 Ala. 238,) it seems that the latter clause of the rule adopted by us, was acted on by the court below, and the commissioners who allotted the dower; and no question was raised in the court below, or in this court, on that point.

It may be said, with much force, that if the appellee in this case had applied for her dower before the emancipation of her slaves, she would not have been entitled to dower; and that, as she was not then entitled, the heir was not in default in not having dower assigned; and that, therefore, she should not, by her own delay, and the result of events which neither she nor the heir could control, obtain an advantage which the law did not give her at the death of her husband. This is the strongest argument of which we have conceived, against the rule we have adopted, as applicable to this case. But, under any other rule we might adopt, we can conceive of hardships equally great, and arguments as strong against such rule.

It is not shown by the record when administration upon

the estate of John Steadman was granted. If it had appeared that letters of administration had been granted more than eighteen months before the abolition of slavery, and that the estate was in a condition for distribution prior thereto; or that the estate had actually been distributed, without any application on the part of the appellee for a distributive share thereof, we will not decide whether such facts might not constitute an exception to the rule above laid down. We shall not attempt to define the exceptions that may exist to the rule. We think the rule a sound one, and that this case is not an exception thereto, and is within the scope of its operation.

To adopt the rule, that the separate estate of the widow must be valued at the death of the husband, or that such estate, whether in existence or not, must be valued at the date of the distribution of the personalty or the assignment of dower, would be inconsistent with the principles applicable to the interest which a widow has in the personalty and realty of the husband. And the rule we have indicated as the correct one, as applicable in cases like this, is the one which seems to be in accordance with the legislative intention, apparent from the use of the phrase contained in section 1991, " exclusive of rents, income, and profits, and inclusive of the increase of slaves." Why did the legislature use this expression? A previous section of the statute gave the rents, income, and profits of the statutory separate estate, to the husband ; or, rather, it declares, that he shall not be accountable for them, " to the wife, her heirs, and legal representatives." Hence, that clause must refer to such rents, income, and profits, as accrued between the death of the husband and the distribution of his estate. And as to the clause, " inclusive of the increase of slaves," it certainly did not refer to such increase prior to the death of the husband; for it would constitute a part of the *corpus* of her estate before and at his death. *Partus sequitur ventrem.* But it evidently refers to such increase subsequent to the death of the husband, and prior to the distribution of his estate. And this was required for a very good reason ; which was, that she would be entitled at the distribution of his estate to her distributive share of the

increase of the slaves of his estate ; and so she would be to the income and profits arising from the estate of the husband. And we presume the legislature intended, if they did not see, that, by the provisions of the law, her right to dower would be in abeyance until the distribution of the husband's estate ; and therefore that it could not be ascertained, until that time, whether she would be entitled to dower or not. If, at that time, she had no statutory separate estate, although she had one when her husband died, which she had lost without any fault on her part, or by events over which she had no control, then her right to dower would cease to be in abeyance, and she would be entitled to all the rights of a widow who had no statutory separate estate. But if, at the time of distribution, she possessed any separate estate, then the rule laid down in *Glenn v. Glenn's Adm'r*, decided at the present term of the court, would be applicable. So, if the estate of the husband is destroyed by natural causes, or such as the personal representative could not control nor resist, she would have no right to a distributive share of, or dower in, such property, out of such personalty or realty belonging to the estate, as was still in existence.

In the construction of statutes, every word and part of a sentence must be given some influence and office, in order to arrive at the intention of the legislature and the meaning of the statute ; and no word should be rejected as superfluous, where it can be assigned an office, consistently with the evident intention of the legislature, or where it can aid in arriving at that intention.—*Spivey v. The State*, 26 Ala. Rep.; Dwarris on Statutes, 702–07 ; Sedgwick on Stat. & Con. Law, 245–6, 260.

*Quere*—Would the rule laid down apply to the right of the widow to dower in land aliened by the husband during the marriage? and do the words " dower interest," in section 1991 of the Code, include her right of dower to such land? These questions are not answered, because they have not been presented in a form for adjudication, nor been argued.

The ruling of the court upon the demurrer, if erroneous. was without injury to appellant.—*Lawson v. Hicks*, 38 Ala,

279; *Kennedy v. Lambert*, 37 Ala. 57; *Goggins v. Smith, adm'r*, 35 Ala. 683.

The decree is affirmed.

A. J. WALKER, C. J.—Section 2380 (1991) of the Revised Code is in the following words: "If any woman, having a separate estate, survive her husband, and such separate estate, exclusive of the rents, income, and profits, and inclusive of the increase of slaves, is equal to, or greater in value than, her dower interest and distributive share of her husband's estate, (estimating her dower interest in his lands at seven years rent of the dower interest,) she shall not be entitled to dower in, or distribution of, her husband's estate." This law establishes a bar of the widow's dower and distributive share, predicated upon a comparison of their value with the value of her separate estate. The bar is effective, when the value of the separate estate is equal to, or greater than, the value of the dower and distributive share. The comparison of values must, in my judgment, relate to the time of the husband's death. The valuation of the separate estate, and of the dower and distributive share, is to be taken at that time, and in the condition in which they respectively existed at that time. The converse of this proposition is, that the comparison of value is to be made in reference to the time of distribution, and of the assignment of dower. The proposition is maintained, and its converse refuted, by the same argument.

If my proposition is not correct, and if the converse of it is, the right of dower does not exist at the husband's death, but springs up at the time of distribution; and although the state of facts may exist at the husband's death, under which the widow is entitled to dower, a change may be effected by a subsequent change in the condition of the property. Her separate estate may be less in value at the husband's death, than the dower and distributive share, and it may be greater when the estate is ready for distribution; and *e converso*, her separate estate may be as valuable as dower and a distributive share at the husband's death, and at the time of distribution it may be less valuable. It is obvious, therefore, that if the comparison of

value is not made until the time of distribution, the right of dower does not attach at the husband's death, but is contingent, and is dependent upon subsequent circumstances, and is not a right at all until the time of distribution. This can not, in my judgment, be the law.

Such a construction of the statute changes the nature of the dower right entirely. The right of dower is inchoate until the husband's death, and then it is consummated. Marriage, seizin, and death are the essential, and only essential, requisites of dower. It vests at the husband's death. Park on Dower, 7, 247 ; Lambert on Dower, 26 ; 1 Scribner on Dower, 618 ; 2 *ib.* 26 ; Co. Litt. book 1, ch. 5, § 36, p. 31 ; *Boyd v. Harrison*, 36 Ala. 533 ; *Potier v. Barclay*, 15 Ala. 451 ; *Beavers v. Smith*, 11 Ala. 321.

It is settled in this State, that the widow's quarantine commences at the husband's death, and that she is entitled to the rents of the dwelling-house and the plantation connected therewith from the death of the husband until dower is assigned.—Revised Code, § 1630 (1359 ;) *Waters v. Williams*, 38 Ala. 680 ; *McAllister v. McAllister*, 37 Ala. 484 ; *Oakley v. Oakley*, 30 Ala. 131 ; *McLaughlin v. Goodwin*, 23 Ala. 846 ; *Pharis v. Leachman*, 20 Ala. 662–686 ; *Wallace v. Hall*, 19 Ala. 367 ; *Cook v. Webb*, 18 Ala. 810 ; *Inge v. Murphy*, 14 Ala. 289. This widow's quarantine, it is also settled, is a statutory substitute for dower until it is assigned, and can only exist when there is a right of dower. *Shelton v. Carrol*, 16 Ala. 153 ; *Boynton v. Sawyer*, 35 Ala. 497 ; *Vaughn v. Vaughn*, 30 Ala. 329 ; *Weaver v. Crenshaw*, 6 Ala. 873. Therefore, the proposition, that the dower does not attach until the distribution of the estate, deprives the widow of her quarantine, and, when she has a separate estate, practically abrogates the humane provision of the law for her maintenance until her dower is assigned.

Where any provision is made for the widow by her husband's will, she forfeits her dower by a failure to dissent within twelve months.—*Adams v. Adams*, 39 Ala. 274. Now, if the right of dower can be controlled by events occurring subsequent to the husband's death, the existence of a right of dower may be affected by circumstances occurring after the expiration of the period allowed for an election between

the provision made by the will and dower, to be signified by a dissent from the will. It would, therefore, happen that, where the widow has a separate estate, she would be deprived of the right of dissent, unless the distribution of the estate could be made in twelve months; which certainly cannot be accomplished, in most cases, in less than eighteen months. When there is a will making any provision for a widow, who has any separate estate, it must happen in most, if not all cases, (under the ruling of my brethren,) that she will be deprived of her dower, for the ascertainment of the right of dower will be postponed beyond the period allowed for electing to take it.

The statute bestowing the widow's quarantine, existed before the adoption of the Code of 1852, and was construed, in repeated decisions, to vest in the widow a right to the possession of the dwelling-house, and the plantation connected therewith, for an indefinite period, commencing at the husband's death, and terminating only with the assignment of dower. This law must be deemed to have been incorporated into the Code, with its established construction. Indeed, decisions made since the Code became the law of the State, re-assert the construction of the law. The decision of the majority of the court effects, in my judgment, an entire change in the law as thus construed, and makes the quarantine, if the widow have any separate estate, an interest commencing at some undefined and undefinable time in the future, when the estate may be ready for distribution. The provision of a home and support for the widow, pending her doleful and helpless condition between the death of her husband and the assignment of her dower, which is the beneficent object of the law, is defeated, and the very purpose of the law-maker is thwarted, by the ruling of my brethren.

Section 1630 (1359) of the Revised Code in its language means, and, I think, has always been understood to mean, that the widow's quarantine commences at the husband's death. The opinion of my brethren has the effect, in my judgment, to change that section, so as to make it read as follows: "The widow may *retain* possession of the dwelling-house where her husband most usually resided next

Steadman v. Steadman.

before his death," &c., " until her dower is assigned her, free from the payment of rent, *unless she has a separate estate; and then she shall be entitled to such possession, only when the estate shall be ready for distribution.*" The decision of the court seems to me more difficult of reconcilement with justice, in view of the fact that the acceleration or delay of distribution is not under the widow's control. The statute contemplates, that the widow is to *retain* possession. The decision in this case authorizes her ejectment from the possession, until at some future time certain valuations can be made.

The Code of 1852, which contains section 1991, (the law under construction,) was a system the different parts of which are framed in reference to each other ; and each part is, therefore, to be construed in reference to others upon the same subject. Now, section 1372 of the Code of 1852 was in the following words: " All suits or proceedings for dower must be commenced within three years *after the death of the husband,* and not after." Here, then, a comprehensive and inflexible rule was established, which initiated the operation of the statute of limitations against the right of dower, *in all cases,* from the husband's death. The construction of section 1991, which makes the dower under it originate at a day subsequent to the husband's death, postpones the commencement of a right to a time subsequent to that at which the statute of limitations has begun to operate against it.

Section 2380 (1991) of the Revised Code places a widow's distributive share in her husband's estate in the same category with dower ; and if she has no property in dower, until the period of distribution arrives, neither can she have any property in the distributive share before the arrival of the same period. It is settled, however, that the right of a distributee vests at the husband's death.—*Hardy v. Boaz,* 29 Ala. 168 ; *Sterns v. Weathers,* 30 Ala. 712 ; *Sharp v. Burns,* 35 Ala. 653 ; *Anderson v. Anderson,* 30 Ala. 683. If, therefore, the section under consideration postpones the commencement of property in dower, it delays to the same extent the property in a distributive share, and creates a new character of distributive share—one that commences,

Steadman v. Steadman.

not at the husband's death, but at some later day. I can not conceive how it is that a wife's right as distributee can be the result of such unfavorable discrimination, when her right to a distributive share is given in the same section and by the same words with the distributive shares of other distributees.—Revised Code, § 1897 (1581).

The decision of the court involves a postponement of the dower right to *final* distribution. It therefore deprives her, if she has any separate estate, of the benefit of the statutes providing for partial distribution, under specified restrictions and regulations, after the expiration of eighteen months.—Revised Code, § § 2105 (1778), *et seq*.

A further objection to the opinion of the court, drawn from our own statutes, is, that it must result in a destruction of analogy between the relation of the wife to the husband's estate, and that of the husband to the wife's estate, and in an unreasonable discrimination against the wife. It leaves the husband to enter upon the enjoyment of one half the personalty, and all the realty, of the wife's separate estate, at her death; but, if she has a separate estate, no matter how small, delays every interest of the wife in the husband's estate, to an undefined day in the future.

It is a wise and prudent, as well as an established principle, that statutes in derogation of the common law are to be strictly construed.—Sedgwick on Statutory & Con. Law, 313. It is also a settled principle, that dower is a right highly favored in the law; and courts do not incline to constructions which trench upon it.—*Ridgway v. McAlpine*, 31 Ala. 458. The statute in hand is an infringement upon the common law in this, that it takes away the right of dower in a class of cases, in which the common law would have given it. It should, upon the principles above stated, be strictly construed, and construed favorably to the right of dower. In my judgment, the decision of the majority of the court, construing this statute to prevent the consummation of dower at the husband's death, is at variance with both those principles.

From the inclusion of the increase of slaves, and the exclusion of rents and profits, in the estimate of the value of the wife's separate estate, an argument is drawn by my

Steadman v. Steadman.

brethren in support of the postponement of the dower. This argument is predicated upon the idea, that the statute means such increase of slaves, and such rents and profits, as may accrue after the husband's death. This idea is, in my judgment, erroneous. It seems to me that the reference is to the increase of slaves, and the rents and profits, which accrued during the coverture; and that the increase of slaves is included in the estimate, because it belonged to the *corpus* of the wife's separate estate; and the rents and profits were excluded, because they belonged to the husband.

I agree that there are difficulties in carrying my construction of the law into operation. It may be impossible to ascertain at the husband's death what is the value of the distributive share. It is believed, however, that in many, if not most cases, it can be approximated sufficiently to enable the court to determine the question of the right of dower. If a case arises where it could not be ascertained, the proper course would probably be to postpone the assignment until the requisite information could be obtained. Be this, however, as it may, I think the carrying into operation of the opposite doctrine will be met with still greater difficulties. I do not think it possible now to anticipate the magnitude of the difficulties and confusion, which will attend the practical operation of the rule adopted by the majority of the court.

The difficulty of the practical operation of the decision of the court will be seen, if the mind reverts to the inquiry, what rule is to govern, when the separate estate of the widow, being personalty, is disposed of and carried away, so that its value can not be ascertained at the time of distribution; when the separate estate is increased in value by the operation of natural causes, or by the skill, industry, or expenditure of the widow, or is lessened by her negligence; or when the estate of the deceased husband is reduced in value by the misconduct of the administrator. These inquiries might be extended, but enough has been said to invite scrutiny and direct investigation.

This dissenting opinion is prepared in reference to, and with a view to support, my dissent in the case of *Glenn v. Glenn's Adm'r*, at the present term.