# PARK'S DISTRIBUTEES *vs.* PARK'S ADM'RS.

[BILL IN EQUITY FOR SETTLEMENT OF DECEDENT'S ESTATE.]

1. *Jurisdiction of equity over settlement of decedents' estates.*—After the settlement of a decedent's estate has been commenced in the probate court, it cannot be removed into the chancery court, by either party, without the assignment of some special reason justifying the interposition of equity.

APPEAL from the Chancery Court of Chambers.
Heard before the Hon. JAMES B. CLARK.

THE bill in this case was filed by the appellants, as

heirs-at-law and distributees of John Park, deceased, against Mrs. Sarah Park, the widow and administratrix, John A. Park, the administrator of said decedent, Allen L. Bailey and Jacob A. Flournoy, the sureties of said administrator and administratix on their administration bond, Henry L. Wilkinson, and Warren Costley; and sought a final settlement and distribution of the estate of said John Park. The material facts alleged in the bill were these: John Park died in the county of Chambers, intestate, some time during the year 1853; leaving as his heirs-at-law and distributees his widow and children, the several complainants in this case, Mrs. Sarah Park, John A. Park, and Eleanor W. Park, since deceased. At the time of his death, said intestate was seized and possessed of a considerable estate, consisting of lands, slaves, money, and choses in action. In October, 1853, letters of administration on his estate were granted, by the probate court of Chambers, to Mrs. Sarah Park and John A. Park, who thereupon gave bond, with Allen L. Bailey and Jacob A. Flournoy as their sureties, and entered on the discharge of the duties of the administration. In November, 1853, said administrators returned to said probate court an inventory of said estate, which is charged in the bill to have been imperfect and incomplete. In December, 1854, they sold a portion of the real estate, under an order of the probate court, to one Andrew Park; which sale was confirmed by the probate court, and the complainants declared themselves satisfied with it. In October, 1855, said administrators applied to the probate court for an order to sell a portion of the slaves and other personal property belonging to the estate, and sold the same, under and pursuant to the order of the court, on the 14th January, 1856; and the complainants sought by their bill to hold said administrators and their sureties liable for the proceeds of said sale. The administrators kept said estate together, during the years 1854 and 1855, without any order of court, or other authority of law, and, during that time, wasted a considerable portion of the personal property; and the complainants asked that they might be charged with the rent of the land, the hire of the slaves,

and the value of the property wasted and lost during those years. In October, 1855, said administrators made a return for an annual or partial settlement, which is alleged in the bill to abound with errors and inaccuracies; and the bill prayed a discovery from them touching all the items in this account. Shortly after the sale of January 14, 1856, above mentioned, John A. Park fled from the country, without making any settlement of his administration on the estate, and was a non-resident when the bill was filed; and it is alleged that both he and Mrs. Sarah Park were insolvent. While the letters of administration of said Sarah and John A. Park were in full force and unrevoked, the probate court granted letters of administration *de bonis non* to Henry L. Wilkinson, the sheriff of the county, who, on the 21st January, 1856, returned to the court an inventory of the property unadministered, wrongfully including therein the slaves which had been sold by the administrators as above stated. In March and November, 1856, said Wilkinson procured from the probate court orders to sell these slaves for the payment of debts, sold them under the orders, and reported the sale to the court in April, 1857. In July, 1856, he also procured an order for the sale of the lands which had been previously sold; sold them, pursuant to the order, to one Warren Costley, who was the highest and best bidder; and reported the sale to the probate court,— by which court said sale was confirmed. The complainants insisted in their bill, that the grant of administration to said Wilkinson was void; that he was chargeable as an executor *de son tort;* that the sales made by him were void; and that, if the sales made by the first administrators were not held valid, the property should be resold under the order of the chancellor. Sarah and John A. Park were required, by an order of the probate court, to appear on the first Monday in February, 1856, and file their accounts and vouchers for a final settlement; but no citation was ever served on them. After several continuances, the probate court stated an *ex-parte* account against them on the 21st January, 1857, which was alleged to be full of errors and mistakes; and the proceed-

ings were at that stage when the bill was filed, on the 7th September, 1857.

The chancellor sustained a demurrer to the bill, for want of equity, and his decree is now assigned as error.

GEO. W. GUNN, for appellants.

M. ANDREWS, contra.

STONE, J.—In this case, the probate court of Chambers had acquired jurisdiction of the settlement of the administration, and had taken some steps therein; and, unless this case be characterized by some special equities, one party had no right, against the objection of the other, to transfer the settlement to another court of concurrent jurisdiction.—Moore v. Lesueur and Wife, 33 Ala. 237, and authorities cited. We have looked into this record, and are unable to perceive any special reasons why the settlement of the administration should be transferred to the chancery court.

Without considering, in any manner, the other points made in argument, or commented on in the decree of the chancellor, the decree dismissing the complainants' bill is, on the ground above considered, affirmed.