## BILLINGSLEA *vs.* GLENN, Pro. Ami.

[FINAL SETTLEMENT OF ADMINISTRATRIX IN PROBATE COURT.]

1. *Dower, value of separate estate as affecting; when both must be estimated.*—The dower of the widow vests in her on the death of her husband, and in determining to what extent her right to it is affected by her separate statutory estate, both the dower interest and the separate estate must be estimated at their respective values at the time of the death of the husband.

2. *Separate estate of wife; to what extent affects her dower, when less than dower.*—The separate estate of the widow, when less than her dower interest and distributive share, does not exclude her entirely, but proportionally, from her life interest in the real estate of her husband.

3. *Quarantine; on what dependent.*—The widow's quarantine depends on the fact, and not on the quantity of dower, and if her separate estate is less than her dower interest, she is entitled to her quarantine.

4. *Separate statutory estate; widow entitled to corpus of, with interest from death of husband.*—The widow is entitled to the *corpus* of her separate estate received by her husband in money, with interest from the time of his death.

5. *Slaves; administrator, when not chargeable with value of.*—An administratrix is not chargeable with the value of slaves lost to the estate by their emancipation, because she did not sell them, when she might have done so, to pay debts.

6. *Same; what election distributees may exercise.*—Where an administratrix, without authority, employed the slaves of the deceased in the business they were engaged in at the time of his death, the distributees may elect to charge her with their hire, or with the profits realized, less the expenses, and when the election is made they must abide by it. But circumstances may require a modification of the principle in its application during the late war.

7. *Confederate money; liability of administratrix for amount received from proceeds of sale of wood during the war.*—Where an administratrix sold a large quantity of wood during the late war, for which she was constrained to receive Confederate currency, which she invested in four per cent. Confederate bonds, her liability should depend upon the use she might have made of the currency with proper care and diligence.

*Overruled cases.*—*Glenn v. Glenn*, 41 Ala. 517, and *Steadman v. Steadman*, 41 Ala. 573, so far as they differ in principle from what is here decided, are overruled.

APPEAL from Probate Court of Montgomery.

Tried before Hon. DAVID CAMPBELL.

Robert J. Glenn died intestate on the 4th day of May, 1858, leaving a plantation and farming implements, &c., and a number of negro slaves, who were, at the time of the intestate's death, worth $37,000. Appellant, the widow of deceased, and who has since intermarried with one Billingslea, gave bond and duly qualified as administratrix, &c., on the 22d day of the same month.

Upon the resignation of appellant, on her final settlement of her administration of said estate, Mary Glenn, one of the heirs of decedent, was represented by guardian *ad litem*, and objected to many of the items of credit in the account, and moved to charge the administratrix for various sums, &c., when the following proceedings were had in the probate court:

The appellant asked for, and was allowed, a credit on her final account for the sum of $5,000, with interest thereon from the death of intestate to the date of the accounting, as a debt due her from the estate, it being proved to the court that $5,000 in money had been received by intestate from the father of appellant, as her statutory separate estate. To this ruling and allowance the guardian *ad litem* duly excepted.

*    *    *    *    *    *    *

It was shown in evidence that the administratrix kept said estate together from the death of intestate to the date of her resignation, and kept the slaves of the estate under her control as administratrix, and employed them in making crops on the plantation (as had been done by intestate in his life-time,) up to the time the slaves were emancipated by the United States armies; that all this was done without any order of court; that the administratrix sold the crops, and accounted for the proceeds in her annual settlements; that the administratrix had never in fact receceived payment for the aforesaid debt due her for her separate statutory estate; that there were suits pending both in favor of and against said administratrix for several years; that when she resigned and filed her account for final settlement, one suit in her favor and one against her were still pending, but that the amounts involved in all said suits were less than the value of said slaves by more

than the amount of the credit for her statutory separate estate; that from January, 1862, to the end of the war, there was no currency in circulation but Confederate money, and that if the slaves had been sold during that period for good money, they would not have sold for more than one-fourth of what they would have brought before the war; that for this reason the administratrix was unwilling to sell them for Confederate money, which was at a discount in January, 1862, and continued steadily and rapidly to depreciate from thenceforth until the end of the war.

Upon this evidence, the guardian *ad litem* moved to charge the administratrix with the value of the slaves; which motion the court refused, and the guardian *ad litem* duly excepted.

The guardian *ad litem* then moved the court to charge the administratrix with so much of the value of said slaves as would equal the amount allowed the administratrix for her statutory separate estate; but the court overruled the motion, and the guardian *ad litem* duly excepted.

\*          \*          \*          \*          \*·          \*          \*

It was further shown that said statutory separate estate was worth more than appellant's dower interest in the lands and her distributive share of the personal property could be worth on a final division and distribution of the estate; that the administratrix, while cultivating the lands with the negroes, as hereinbefore shown, employed an overseer, who lived on the plantation and superintended the same; that the administratrix had never rented out the dwelling house and appurtenances thereunto belonging; that the same were so situated in reference to the plantation, as to be readily occupied without interfering with the plantation; that the administratrix had herself occupied said dwelling house during a portion of each year, and while not actually occupying the same, kept it under her control from intestate's death up to the day of settlement, and had never leased or rented the dwelling house, &c., for the benefit of the estate. Two minor children of intestate lived in said house with the administratrix, but Mary Glenn, a minor, had never lived with the administratrix

since intestate's death. It was further proved that the administratrix had not charged these children of intestate for board, and for this reason she insisted that she should not be charged for the occupation of said premises. Upon this proof, the said Mary Glenn, by her guardian *ad litem*, moved the court to charge the administratrix with the value of the use and occupation of said house for the whole of the time from intestate's death to the day of her resignation. This motion the court refused, but charged the administratrix with the value of the use and occupation of said premises for such time as she had actually used them. To all of which rulings the guardian *ad litem* duly excepted. And to the last ruling the administratrix also excepted.

The administratrix had, at various times, cut wood from the lands of the intestate, and sold the same for the currency then in circulation, for some of which she had accounted in her annual settlement. Between her last accounting and the final settlement, she had thus received $15,713. She always treated the funds thus derived as the property of the estate, keeping it separate from her own money. Ten thousand eight hundred dollars of this identical money she invested in three per cent. certificates of the Confederate States, early in the year 1864. One of the certificates was made out in favor of the estate, and two in her individual name, but this happened through the carelessness of her overseer, who mistook her directions when the money was funded. The administratrix, on the advice of her attorney, who had been advising her throughout the administration, made these investments in Confederate certificates, as the best that could be done, as such certificates were receivable in payment of taxes assessed by the State and Confederate governments. All the action of the administratrix as to selling wood and investing the money derived therefrom in Confederate bonds, was done without any order of court. The minor, Mary Glenn, then moved the court to strike out all the items of credit claimed for the investment in Confederate bonds. The court refused this motion, and allowed the credit; to all of which rulings, &c., an exception was duly taken.

\*    \*    \*    \*    \*    \*    \*

The minor, Mary Glenn, by her guardian *ad litem*, then offered to prove the value of the hire of the slaves for each year from the time of intestate's death up to emancipation, in order that said Mary might make an election between the hire of the slaves and the proceeds of the crops. The court refused to allow this proof to be made, and an exception was duly reserved to the ruling of the court.

    \*       \*       \*       \*       \*       \*       \*

The court charged the administratrix with the value of the $15,713 of Confederate money received for wood, less the credits allowed for the investment in Confederate bonds, &c., and the administratrix duly excepted.

    \*       \*       \*       \*       \*       \*       \*

It was agreed in the bill of exceptions that both parties might assign errors on the record; and the said administratrix now brings the case here by appeal, and each party now assigns in this court as error the rulings of the court, to which they reserved exceptions.

ELMORE & GUNTER, for appellant.

GOLDTHWAITE, RICE & SEMPLE, and FITZPATRICK & WILLIAMSON, *contra*.

[The briefs did not come into Reporter's hands.]

B. F. SAFFOLD, J.—On the final settlement of her administration of the estate of Robert T. Glenn, deceased, by the appellant, his widow, the following questions arose: 1st, Whether the administratrix should be allowed a credit for the amount of her separate statutory estate received by her husband in money, with interest from his death; 2d, Whether she should be charged with the value of the slaves belonging to the estate, because she had not sold them to pay her debts, but had employed them on the plantation without authority, until their emancipation in 1865. Or, if not with the entire value, with so much as would be equivalent to her separate estate as claimed by her. 3d, Whether she should be charged for the use and occupation of the dwelling house and appurtenances, from the death of her husband to the time of her resignation,

or during the time she actually occupied it, because her separate estate was worth more than her dower interest and distributive share would be on a final division and distribution of the estate. The dwelling house was on the plantation, but so situated that it could be used without interference with it. She had occupied the house a portion of the time, with two of her three minor children. 4th, Whether she should be charged with certain certificates of deposit entitling her to receive four per cent. Confederate bonds, because she had obtained them with Confederate currency derived from wood cut by her off the plantation and sold. The greater portion of these certificates were taken in her own name, but it is admitted that the funds so invested belonged to the estate. 5th, Whether the distributees might elect to charge her with the hire of the slaves, instead of the proceeds of the crops.

Mrs. Billingslea became entitled to her dower interest immediately on the death of her husband, unless she was excluded by her separate estate.—1 Scrib. Dow. 618 ; *Boyd v. Harrison*, 36 Ala. 533.; Rev. Code, § 2380. Her separate estate also became hers exclusively the moment it was freed from the marital restrictions. Her right to a distributive share of her husband's personal property attached on the same event, but it was not enforceable until the debts could be ascertained, and might be diminished by them, or entirely divested by the insolvency of the estate. As her dower was a higher and more absolute interest, she had the right, as soon as practicable after the death of her husband, to have her separate estate and her dower interest estimated at their respective values when she became entitled to them.

Section 2381 of the Revised Code provides that if the separate estate be less than the dower and distributive share, so much shall be allowed as will make it equal. Does this mean that her separate estate shall deprive the widow of her life estate in a portion of the lands of her husband, and compel her to take the equivalent? The statute does not say so, nor is such an interpretation imperative. On the contrary, if she cannot have her life estate in the full proportion of the lands, she may take it in less,

and if the heir insists on it, perhaps, must do so. Because she can not have a thousand acres for life, may she not have five hundred? The common law regards a life estate in lands as superior to an absolute estate in personal property, and favors dower. The statute prescribing an equivalent under certain circumstances is in restraint of dower, and should be strictly construed.

Whether Mrs. Billingslea was entitled to retain the dwelling house and appurtenances free of rent, must depend upon whether her separate estate by its value excluded her from dower. If it did not, she was so entitled, because the quarantine privilege depends upon the fact of dower, and not upon its amount.

She was entitled to the *corpus* of her separate estate received by her husband in money, with interest from the death of her husband.

In determining whether she was entitled to dower, the value of her dower interest and of her separate estate at the time of her husband's death, must be ascertained.

The proposition to charge the administratrix with the value of the slaves, because she did not sell them when she might have done so, and pay the debts of the estate, can not be maintained. Such liability can only be incurred by some negligence or misconduct which would amount to a *devastavit*. This part of the estate was so invested at the time she assumed the administration. There was no evidence of want of reasonable care and diligence, nor of any necessity for a sale before the late war. After that commenced, it was exceedingly questionable what course would be the best. Besides, we cannot hold that she was obliged to apply to the courts then existing for authority in the matter. She was compelled, from the necessity of the case, to exercise her best judgment.—*Harrison v. Mock*, 10 Ala. 185; *Houston v. DeLoach*, 43 Ala. 364.

In *McCreelis' Dist'rs v. Hinkle*, *Adm'r*, 17 Ala. 459, it was held that if an administrator without authority should continue to employ the slaves of the deceased in the business in which they were engaged at the time of the intestate's death, and in so doing incurs expenses, the distributees may elect to take the use or hire of the slaves, or the profits

realized by the administrator; they cannot do both. If they elect to charge the administrator with hire they abandon all claim to the profits; but if they claim the profits, they must take them *cum onere*. Under this authority, we decide that the distributees may elect to claim the hire of the slaves, or the profits realized by the administratrix; and having once selected, they must abide by it. But this principle may require some modification in its application during the war. To hire the slaves was the most apparent duty. But if, for any cause shown, an undue risk would have been incurred by so doing, or any decided advantage would have been derived by retaining them on the plantation, or for any reason a prudent and efficient person would have pursued the one course or the other, the administratrix ought to have the benefit of those trying circumstances which confounded wisdom.

As to the item respecting the wood and the Confederate bonds, no influence should be given to any want of sanction of the probate court to the funding in Confederate securities. If the administratrix sold wood taken from the plantation by the labor of the slaves, with any profit to herself or to the estate, for which she has not accounted, she is liable to account. If she received payment for it in Confederate currency, because it was the best she could obtain, and it perished on her hands without negligence or default on her part, she should not be held responsible. This is on the supposition that she is proceeded against for profits realized.—*Houston v. Deloach*, 43 Ala. 364.

This opinion is not in accord with the judgment of this court, when the case was here before under the title of *Glenn v. Glenn*, 41 Ala. 571, or with that in *Steadman v. Steadman*, 41 Ala. 473. The principles announced in them have not as yet affected to any considerable extent the interests of the people. They were the conclusions of a majority only of the court, from which the Chief Justice dissented in a most clear and conclusive argument. We are constrained to overrule them so far as they differ from the decision in this case.

The transcript is insufficient to enable us to determine more precisely than we have done the assignments of

error, but perhaps enough has been said to direct the further action of the probate court.

The decree is reversed, and the cause remanded.