# Hutchinson *et al. v.* Owen *et al.*

## *The Power of an Administrator over Choses in Action.*

1. *An executor or administrator has the legal title to choses in action in his hands for administration.*—An executor or administrator possesses the legal title and has absolute power to transfer or dispose of *choses in action* in his hands for administration. No *bona fide* dealing with him in this regard can be impeached.

2. *The indiscretion of an administrator can not effect others fairly dealing with him.*—The indiscretion of an executor or administrator can not be visited on those who deal fairly with him.

APPEAL from the Chancery Court of Lowndes.
Heard before the Hon. HURIOSCO AUSTILL.

In 1858, Haley Hutchinson, a resident citizen of Lowndes county, in the State of Alabama, died. He left "a large property, both real and personal;" but left neither a widow nor children. Soon after his death, Montgomery S. Relfe and William R. Powell obtained letters of administration from the Probate Court of Lowndes county, and administered upon his estate.

On the 13th of July, 1859, the said administrators filed a "petition in the said Probate Court of Lowndes county, praying for an order to sell the lands belonging to Haley Hutchinson in his life-time, on the ground that the same could not be equitably divided among his heirs;" and on the 5th of September, 1859, the Probate Court granted an order authorizing the sale of the land by the administrators. In pursuance of the said order, the administrators sold the said land on the first Monday of December, 1859, and "Lewis Owen became the purchaser thereof, at the price of thirty-five thousand four hundred and fifty-nine 66-100 dollars." To secure the payment of this sum of money, the said Owen,

made a promissory note, with three sureties, payable on the first day of January, 1861, with interest from the first day of January, 1860. The sale of the land was duly reported by the administrators, and was confirmed by the Probate Court of Lowndes county on the 31st day of December, 1859.

The administrator received in payment of the said note from the said Lewis Owen, six thousand five hundred dollars, on the first day of May, 1862; on the 13th of June, 1862, thirteen thousand five hundred dollars; and on the 27th day of December, 1862, ten thousand dollars. These payments left, on the day last mentioned, a balance of thirteen thousand six hundred and seventy dollars still due.

In the month of March, 1863, the administrators of the estate transferred the promissory note made by Lewis Owen and his sureties to Henry B. Wigginton and Georgiana A. Shepherd, and received in payment of said sale and transfer of the promissory note, Confederate States treasury-notes of the nominal value of about fourteen thousand dollars. This was the only compensation received by the administrators for the sale and transfer of the said note. This disposition of the note was made "privately and without any order of the said Probate Court." The purchasers of the note knew that it was assets in the hands of the administrators of the said estate.

On the 24th day of October, 1863, the administrators reported to the Probate Court of Lowndes county that the whole of the purchase-money of the said land had been paid by said Lewis Owen; and on that day the said Probate Court rendered a decree on said report, authorizing and ordering the administrators to convey, by proper deed, to Lewis Owen all right, title and interest which said Haley Hutchinson had in said land at the time of his death. In pursuance of the decree, the conveyance of the land was made to Owen.

In 1871 William Hutchinson and Robert Hutchinson, who were nephews of the decedent, filed their bill of complaint in the Chancery Court of Lowndes county, against Lewis Owen and others. It contained the foregoing statement of facts, and charged that the said report made by the administrators of the estate to the Probate Court of Lowndes county, "did not speak the truth; that said decree rendered thereon was based alone upon said false report, and the said deed from Relfe and Powell to Lewis Owen was executed alone by virtue of said false report and the decree thereon, and that the whole transaction, commencing with the sale of the said note and followed by said report, decree and deed,

was a fraud upon the rights of the complainants, and was illegal and void.

The complainants also averred, that they had never "authorized, sanctioned, ratified or confirmed said illegal transaction, or any part of it, from the sale of the note to the execution of the deed of conveyance in pursuance of the decree of the Probate Court of Lowndes county; and the said transaction was false and fraudulent." They alleged also, that the sum of thirteen thousand six hundred and seventy dollars, with interest thereon, from the 27th day of December, 1862, was still due on the said promissory note; and that the administration of the said estate had never been settled.

The complainants, among other things, prayed that the administration of the estate of said Haley Hutchinson be removed to the Chancery Court; "and that the report made by Relfe and Powell, that the purchase-money of said land had been paid in full, the decree of the Probate Court of Lowndes county, authorizing and ordering the said Relfe and Powell to execute a deed, conveying all the right, title and interest which the said Haley Hutchinson had in said land, at the time of his death, to Lewis Owen, and the deed or deeds, executed by the said Relfe and Powell, under said decree, be set aside, annulled and declared void and of no effect, so far as they affect the rights of the complainants; that an account be taken of the amount due and unpaid on said note at the time of the unauthorized and illegal sale thereof with interest thereon, and that the same be declared a lien on said land," &c.

. The defendant, Owen, and A. G. McGehee, in their answer, "deny that said Lewis Owen was the sole purchaser of said lands; on the contrary, they aver that said lands were purchased jointly by said Lewis Owen, Albert G. McGehee, Elizabeth Harrison and Thomas H. Watts; and that for convenience and by agreement and arrangement the purchase was set down to Lewis Owen. The said note was a joint note of the four principal makers; and by agreement before the purchase was made, said lands were partitioned among the four purchasers, by lines then agreed on; said Owen bid and purchased for each and all of the parties on this agreement." The answer admitted "the payments alleged to have been made by Lewis Owen, but denied that they are the only payments made; on the contrary, it alleged that the whole amount of said note was paid to said Relfe and Powell; that nothing is due thereon, and that the said

note was delivered up and surrendered by the said Relfe and Powell."

On the final hearing of the case, the court decreed that the complainants were not entitled to the relief prayed, and ordered that the bill of complaint should be dismissed.

H. C. SEMPLE, and R. M. WILLIAMSON, for appellant.—1. Had the administrators any title to this land? On the death of Hutchinson the title vested in the heirs. The administrators were merely naked trustees, with a naked power of sale under the order of the court for a single purpose, the distribution of the proceeds of sale among the heirs. Let us consider the power of administrator or executor over *choses in action* of testator or intestate. Whence is it derived? From the title and duty of collection for payment of debts and distribution, or in case of will, of legacies also. But even as to these, he is a *trustee*, and all who deal with him as such are affected by his character, and bound not to aid in defeating the performance of his duties. As to his power of sale of assets or *choses in action*, Lord THURLOW states it strongly in 2 Williams on Executors, p. 840, where the question is fully discussed and all the authorities are cited.—17 Vesey, 166–71; 7 Ves. 164, 570; 2 Crom. & Jer. 483–4; 11 Beavan, 270; 2 Rand. 297–8–9; 5 Rand. 201.

2. Now, in this case it appears, from the evidence, that Wigginton, administrator of Shepherd, bought a note, well secured by land, two-thirds of the purchase-money having been paid, and secured by three sureties, besides a solvent maker, for two-ninths of its value, for a purpose not consistent with or promotive of the interests of Hutchinson's heirs, but solely to advance the interests of Shepherd's estate, in which they had an interest. The fact that they held the note to be collected for *division among the heirs*, and not for general purposes of administration, known to W. as well as to them, shows that such a sale is irreconcilable with good faith.

3. The whole case proved, as to Owen and McGehee by unwilling witnesses, shows a scheme of fraud and concealment. The parties not only perpetrated a fraud, but intended a fraud. Had Owen been able to pay it in Confederate States notes, or had the administrators been willing to accept payment from him in Confederate States notes, what was the necessity of the roundabout way of effecting it by a sale to W., as administrator of Shepherd, and a settlement by him, with Owen, of S.'s debt? It is affirmed that the adminis-

[Hutchinson v. Owen.]

trators would not take depreciated notes from Owen; that Owen would not take them from Shepherd's administrator, and thus the administrator did for Wigginton what they refused to Owen. They sold to him for Confederate States notes, when they would not take such notes from Owen in payment.

DAVID CLOPTON, for appellees.

BRICKELL, C. J.—We do not perceive any substantial difference between this case and the case of *Waring v. Lewis,* 53 Ala. 615, *VanHoose v. Bush* (54 Ala. 342); *Baldwin v. Hatchett* (56 Ala. 561); *Stollenwerck v. Nelson* (in manuscript). These cases rest on the principle that an executor or administrator, is clothed with the legal title, and has the absolute power to alien or dispose of choses in action, in his hands for administration. Having this power, no *bona fide* dealing with him can be impeached—in the absence of fraud or collusion, no remedy can be pursued against those who may make payments to him, or to whom he may transfer or with whom he may compound. Whatever may be his improvidence, and whatever liability he may incur in consequence of it, those dealing with him fairly and honestly, are entitled to protection. There is no room on the facts found in this record for the imputation of any impurity of intention to any of the parties. Events have shown that it would have been better for the heirs and distributees of the estate, that the administrators should not have accepted Confederate treasury-notes, in payment of the note given for the purchase-money of the lands. Or, it may be looking alone to the circumstances under which the payment was made, that it can be fairly said it was injudicious. The mere indiscretion of an executor or administrator can not be visited on those who deal fairly with him.—*Field v. Schieflin,* 7 Johns. Ch. 50; Perry on Trusts, § 225; 1 Story Eq. § 579.

Let the decree of the chancellor be affirmed.

STONE, J., not sitting.