| 64 | 345 |
| 93 | 277 |

| 64 | 345 |
| 97 | 563 |

| 64 | 345 |
| 103 | 446 |
| 105 | 466 |

| 64 | 345 |
| 130 | 203 |
| 131 | 78 |

# Glenn's Adm'r *v.* Billingslea.

*Bill in Equity by Administrator de bonis non, to compel Settlement by Administrator in chief.*

1. *Decedent's estate; jurisdiction of Chancery and Probate Courts, in matter of settlements of administrations.*—Ordinarily, the Probate and Chancery Courts have concurrent jurisdiction in the matter of settlements of administrators' accounts, and the settlement must proceed in the court which first acquires jurisdiction; yet, if the settlement is commenced in the Probate Court, and a question there arises which that court, by reason of its limited powers, is incompetent to determine, either party may remove the settlement into the Chancery Court.

2. *Same; when heirs and distributees, or administrator, may come into equity.* Heirs and distributees, the parties beneficially interested in the estate, may come into equity, in the first instance, to compel a settlement of the administrator's accounts; but the administrator himself, when he is the actor, must proceed in the Probate Court, and can not come into equity without showing some special reason for a resort to a court of equity.

3. *Same; when administrator de bonis non may come into equity.*—In compelling a settlement of the accounts of his predecessor in the administration, an administrator *de bonis non* represents the distributees, or persons beneficially interested in the estate, and may come into equity in the first instance, as they might, without showing any special equitable ground, at any time before the Probate Court has acquired jurisdiction.

4. *Same; election as to charging administrator with waste, rents and profits.* Where the administrator in chief kept the estate together for a number of

[Glenn's Adm'r v. Billingslea.]

years, without an order of court, cultivating the lands with the labor of the slaves, selling the crops, and cutting and selling timber from the lands ; it is the right and duty of the administrator *de bonis non* to hold him accountable for these things, and he has the right to elect as to the manner in which the charge shall be made, as the distributees might; and this election he may exercise in the Probate Court, without resorting to a court of equity, although an infant distributee is interested in the settlement.

5. *Same; citation to former administrator; when jurisdiction of Probate Court attaches.*—When an administrator has resigned, or been removed, it is his duty to settle his accounts within one month after his authority has ceased, and, on his failure to do so, the court proceeds, *ex mero motu*, to compel a settlement (Code, §§ 2590-96); and although it is a proper practice to issue a citation to him, before resorting to compulsory measures, a citation is not required by the statute, and its issue is not taking jurisdiction by the court, so as to prevent a resort to equity.

6. *Discontinuance of settlement.* —When a decree of the Probate Court, rendered on settlement of the accounts of an administrator whose authority has ceased, is reversed by this court on appeal, but the certificate of reversal is not sent down for seven years, during which time no action is taken in the matter in the court below, the proceeding is not thereby discontinued.

7. *Statutory provisions as to settlements of administrators whose authority has ceased.*—The several statutory provisions contained in the Revised Code of 1867 (§§ 2232-38, 2165-67), and in the Code of 1876 (§§ 2537-40, 2590-96), though not collated, nor even placed in juxtaposition, in either compilation of the laws, evidently relate to the same subject, and are to be construed together, giving operation to each.

8. *Abatement and revivor.*—The statute which requires actions to be revived within eighteen months after the death of a party (Code, § 2908), does not apply to a proceeding for the settlement of an administrator's accounts in the Probate Court.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. H. AUSTILL.

The bill in this case was filed on the 22d August, 1877, by William T. Hatchett, as the administrator *de bonis non* of the estate of Robert J. Glenn, deceased, against Mrs. Harriet Billingslea and her husband, H. C. Billingslea, and the heirs and distributees of the estate of said decedent; and sought to compel a settlement of Mrs. Billingslea's administration on said estate. Said R. J. Glenn died, as appears from the allegations of the bill, on the 4th May, 1858, in said county of Montgomery, where he resided , leaving a considerable estate, consisting principally of a plantation and slaves in said county, valued at about $65,000. On the 22d May, 1858, letters of administration on his estate were granted by the Probate Court of Montgomery to Mrs. Harriet Glenn, his widow, who duly qualified, and entered on the duties of the administration ; and she afterwards married said H. C. Billingslea, her co-defendant in this suit. On the 3d September, 1866, Mrs. Billingslea resigned the administration, and her resignation was accepted ; and letters of administration *de bonis non* on said estate were thereupon granted to W. G. Waller, who continued to discharge the duties of the trust until his death, in May, 1872, when letters of administration

*de bonis non* were granted to the complainant in this suit. While Waller was acting as administrator of the estate, he sold the lands, under an order of the Probate Court, and Mrs. Billingslea became the purchaser; and she was still in possession when the bill was filed. Said R. J. Glenn left three children surviving him; one of whom has since married R. C. Brickell, another has died, intestate and unmarried, and the third was an infant when the bill was filed, the complainant being her guardian by appointment of said Probate Court.

The bill alleged, in addition to these facts, that Mrs. Billingslea had never made a final settlement of her administration; that she, while acting as administratrix, kept the estate together, without any order of court, or other authority, and cultivated the lands with the labor of the slaves, until they were emancipated by the result of the war in 1865; that she received and sold the crops raised each year; that she also cut down and sold large quantities of timber then standing on the lands, whereby their value was impaired; that in her several annual or partial settlements with the court, she charged herself with amounts which, as she claimed, were the profits arising from carrying on the plantation, instead of the rent of the lands and the hire of the slaves; that she also claimed to have invested large sums of money, arising from the sale of wood and timber, in bonds of the Confederate States, which perished on her hands, and she asked credits for such investments, though they were not made by or under the authority of the court. On these facts, the complainant insisted that the heirs and distributees of the estate had a right to elect, after all the facts had been ascertained, and the court had decided the legal questions arising from the transactions in the notes and bonds of the Confederate States, whether they would charge the administratrix with the *devastavit* and waste committed by her, or with the proceeds of the sales of the wood and timber; and whether they would charge her with the proceeds of the crops received by her, or with the rent of the land and the hire of the slaves; and this right of election, he insisted, so far as the rights of the infant distributee were concerned, could only be exercised in and by a court of equity. It was alleged, also, that the decedent's estate was worth, at the time of his death, after payment of all debts, at least $50,000; that the widow and administratrix had a statutory separate estate amounting to $5,000, which her husband had received and used, and which, it was insisted, must be presumed to have been paid, and thereby extinguished as a debt against the estate; and that she had never paid the purchase-money for the lands she

bought at the sale by Waller, though the sale had been confirmed. The prayer of the bill was, that the administration and settlement of Glenn's estate be removed into said Chancery Court; that Mrs. Billingslea's administration might be there settled, and also the complainant's administration, and final distribution made; and for other and further relief.

Mrs. Billingslea and her husband filed the following plea to the jurisdiction of the court: "Defendants say, that this court should not take jurisdiction of this cause, for this: that the said respondent Harriet resigned her administration of the estate of said R. J. Glenn in the year 1866, and thereupon proceeded to make, and did make a final settlement of her said administration in the Probate Court of Montgomery; and that an appeal was taken to the Supreme Court from the decree of said court on said final settlement; and that said decree was reversed by said Supreme Court; and that afterwards, to-wit, in July, 1868, respondents proceeded to make, and did made another final settlement in said court, of the administration of said respondent Harriet; and that an appeal was taken from said final settlement to the Supreme Court; and that said cause was, on such appeal, at the January term of said court, 1870, reversed and remanded, but no certificate of reversal of said cause was received by said Probate Court, nor said court advised of such reversal, prior to June 29, 1877; and that on said 29th June, 1877, the said complainant caused respondents to be cited in and by said Probate Court, to appear and make a final settlement of said Harriet's administration of the estate of said Glenn, deceased; and that respondents did appear in said Probate Court, on, to-wit, the 22d October, 1877, and filed the accounts and vouchers of said Harriet for the final settlement of her said administration; and that thereupon said court proceeded in and about said settlement, according to law, with the full knowledge thereof on the part of said complainant, and afterwards, to-wit, on the 19th November, 1877, rendered a final decree in the matter of the administration of the estate of said R. J. Glenn, deceased, by the said Harriet: That one W. G. Waller was appointed administrator *de bonis non* of said estate, immediately after the resignation of said Harriet, and continued such administrator until complainant's appointment, which occurred after the month of May, 1872; that said Waller, the administrator *de bonis non*, and the heirs of the said R. J. Glenn, were parties to said settlements in the Probate Court in 1868, and prior thereto; and that in and on said settlements, the said administrator *de bonis non*, W. G. Waller, and the said distributees, elected between charging respondents with rents of the lands and hire of the slaves, and with the

[Glenn's Adm'r v. Billingslea.]

crops and produce of the farm and slaves, and elected to charge respondents with the proceeds of wood cut on the said lands and sold. And respondents plead these facts, as reasons why this court should not take jurisdiction of this case; and that the matter of the final settlement of said administration was, at the date of the filing of this bill, and had been for a long time anterior thereto, pending in the Probate Court of Montgomery, and that said court was a court of competent jurisdiction to hear and determine all matters arising on said settlement."

The chancellor sustained the plea, and dismissed the bill; and his decree is now assigned as error.

CLOPTON, HERBERT & CHAMBERS, and E. J. FITZPATRICK, for the appellant. (No brief on file.)

W. A. GUNTER, contra.—The plea says the court ought not to proceed in the matter of the settlement of Mrs. Billingslea's administration, as prayed in the bill, on account of the former proceedings instituted in the Probate Court, and there yet pending and undetermined. If any of the other matters brought forward in the bill, as grounds for special equitable relief, have any merit, they are separate and distinct from the matter of the plea, and are no answer to it. Mrs. Billingslea's administration has been twice finally settled, as shown by the averments of the plea, and by the decisions of this court on appeal.— Glenn v. Glenn, 41 Ala. 571; Billingslea v. Glenn, 45 Ala. 540. That the former settlement, though twice reversed, was not discontinued, see Brown v. Clements & Hunt, 24 Ala. 354; 2 Brick. Dig. 368. Even if it had been discontinued, a new one was commenced by the citation to Billingslea and wife; and the concurrent jurisdiction of the Probate Court having thereby attached, the settlement must proceed in that court, unless some special equity intervenes to prevent it.— Teague v. Corbitt, 57 Ala. 529. No suggestion was made, on either of the former settlements, that the powers of the Probate Court were not adequate to make a full and final settlement. It is the duty of the administrator de bonis non to bring his predecessor to a settlement: he is the party with whom the settlement must be made, and to whom any balance, if found against the retiring administrator, must be paid. He represents the distributees on the settlement, and they are bound by his action, if done in good faith. If they have any election, as to the manner in which the retiring administrator shall be charged on account of his conduct, it is his right and duty to make the election, being responsible to them for his good faith; and this election is shown by the

reported cases to have already been made on the former settlements —41 Ala. 571; 45 Ala. 540. If the infant distributee has any separate right of election, in any of the matters brought forward, it can be asserted in the Probate Court, as well as under this bill, which is not filed in her name, nor in her interest. The administrator *de bonis non* has the same right of election which was conceded to the distributees in *Swink's Adm'r v. Snodgrass*, 17 Ala. 653; and *Hopper v. Steele*, 18 Ala. 832.

STONE, J.—This case raises the question of the right to remove an administration settlement from the Probate to the Chancery Court, on the application of the administrator *de bonis non*, who succeeded to the administration. This is not like the application of an administrator to remove his own settlement. The administrator *de bonis non* has the right, and it is his duty, to reduce to his possession all the assets of the estate, whether changed in form or not, which the former administrator has not disbursed in due course of administration; with the exception, that the outgone administrator may retain assets in his hands, to repay himself for any excess of disbursements he may have rightfully made. To this end, it is made the duty of the resigned or removed administrator to file his accounts, and settle, within one month after his authority ceases; and failing, it is the duty of the court having jurisdiction of the administration, to compel him to do so. Code of 1876, §§ 2590, 2592, 2593, 2537; *Whitworth v. Oliver*, 39 Ala. 286, 292-3; *Drenkle v. Shoeman*, 9 Watts, 485; *Cannon v. Jenkins*, 1 Dev. Eq. 422.

It has been many times declared in this court, and must be regarded as firmly settled, that, with certain limitations, the jurisdiction of the Chancery and Probate Courts is concurrent in the matter of settlements of administrators. Hence, it is held that, when the distributees, or those desiring to bring the administrator to a settlement, are the actors, or moving party, they may institute and conduct the proceedings in the Probate or Chancery Court at their option, without assigning any special ground of equitable cognizance, as a reason for going into the latter court. This untrammeled option exists, and continues, until the one or the other court has acquired or taken jurisdiction of the settlement, and no longer. For, the jurisdictions being concurrent, after either court has acquired the jurisdiction, the other is powerless to interfere, unless the settlement involve some question or questions which the Probate Court is incompetent to hear and determine; when the settlement may be removed from the Probate to the Chancery Court, on the application of

either party. To authorize this, however, some question must arise in the account or settlement, which the Probate Court, by reason of its limited powers, is incompetent to try. When the administrator is the actor in bringing about the settlement, he must proceed in the Probate Court, and can not resort to the Chancery Court, unless he shows some special ground of equitable jurisdiction, which the Probate Court is incompetent to administer.—*Cherry v. Belcher*, 5 Stew. & Por. 133 ; *Dobbs v. Cockerham*, 2 Por. 328; *Leavens v. Butler*, 8 Por. 380, 396-7 ; *Blakey v. Blakey*, 9 Ala. 391; *Dement v. Boggess*, 13 Ala. 140 ; *Hunley v. Hunley*, 15 Ala. 91 ; *Wilson v. Crook*, 17 Ala. 59 ; *Pearson v. Darrington*, 18 Ala. 348; *Gould v. Hayes*, 19 Ala. 438, 446-7 ; *Pearson v. Darrington*, 21 Ala. 169 ; *Stewart v. Stewart*, 31 Ala. 207 ; *Moore v. Lesueur*, 33 Ala. 257 ; *Sellers v. Sellers*, 35 Ala. 235 ; *McNeill v. McNeill*, 36 Ala. 109 ; *Bush v. Cunningham*, 37 Ala. 68 ; *Portis v. Creagh*, 4 Por. 332 ; *Horton v. Mosely*, 17 Ala. 794 ; *Park v. Park*, 36 Ala. 132 ; *Scott v. Abercrombie*, 14 Ala. 270 ; *King v. Smith*, 15 Ala. 264.

The administrator *de bonis non*, in the matter of the settlement of his predecessor, represents the estate, and those interested in it as creditors or distributees, and is the antagonist of the administrator sought to be brought to a settlement. The object is, to recover and remove the assets from one custody, and to place them in another, for further and complete administration. The theory on which an administration *de bonis non* is called into exercise is, that the office, power and functions of the preceding administrator have terminated, without complete administration, and without so finishing its duties as to leave nothing to be done, except to make the final settlement. Hence, the administrator *de bonis non* represents the estate, and those interested in it, precisely as the administrator in chief does. The difference is not in the nature and character of his rights and duties ; it is in the amount of assets which come under his dominion. This must always be diminished by the sum rightfully administered by his predecessor.—*Shackelford v. Runyan*, 7 Humph. 141. Such administrator, as we have shown, represents the estate, and, for the purpose of possessing himself of, and administering the assets, he represents the creditors and distributees. They, as a rule, can claim nothing of or from the personal assets, except through him. And in this State, under our statutes, the administrator can claim, even against the heir, the possession, rents and profits, and, in certain cases, the right to sell the real estate, for the purpose of paying debts.—*McCullough v. Wise*, 57 Ala. 623, and authorities cited.

When an administrator who has resigned, or been removed, before complete administration, makes his settlement, the antagonist interest, as we have shown, is represented, not by the creditors or distributees of the estate, but by the continuing co-administrator, if there be one ; and if there be none, then by the administrator *de bonis non ;* and, on such settlement, if there be a balance found against the settling administrator, the decree for such balance must be rendered in favor of the continuing co-administrator, or the administrator *de bonis non,* as the case may be.— Code of 1876, § 2591. And if the administrator *de bonis non* fail to use proper diligence, in recovering the assets of the estate which might have been recovered by such diligence, he renders himself accountable for the loss, to those entitled to the estate.— *Wilkinson v. Hunter,* 37 Ala. 268 ; *Harris v. Parker,* 41 Ala. 604 ; *Willis v. Willis,* 16 Ala. 652 ; *Green v. Fagan,* 15 Ala. 335 ; *Pearson v. Darrington,* 32 Ala. 228.

The administrator stands in the place of the decedent, and is clothed with large powers and discretion, to be exercised with prudence and good faith, for the benefit of the estate. In the reduction of choses in action to money, he may, by compromise or otherwise, do what a prudent man would do in reference to his own affairs ; and in thus acting, he only renders himself accountable for losses that are the result of his own carelessness, or want of good faith.— *Gould v. Hayes,* 19 Ala. 438 ; *Henderson v. Simmons,* 33 Ala. 291 ; *Baldwin v. Hatchett,* 56 Ala. 461 ; *Hutchinson v. Owen,* 59 Ala. 326.

The administrator *de bonis non* had the power and authority to receive from the administratrix in chief compensation for the alleged waste, and for the unauthorized keeping up and cultivation of the plantation. Such compensation, when received, will be assets in his hands, for the payment of debts, or for distribution. There can be no difference, in legal effect, between a suit and recovery for such injury, when brought against the administrator in chief, and when the suit and recovery are against a stranger ; and if we were to hold it necessary, in the present case, to invoke the tutelary powers of the Chancery Court, to elect for the infant heir by which of two methods the damages should be computed, analogy and consistency of decision would require us to exact the same rule, if the suit were for similar wrongs committed by a stranger. We think the administrator *de bonis non* is the proper person to make the election, in such a case as this, responsible as he is for a prudent exercise of the power. We think, also, there is a broad distinction between a case like this, and a case of conversion by an administrator or other trustee, of the assets, or a part of them, into other and differ-

ent property.—Leading Cases in Equity, 4th Amer. ed., vol. 1, part 2, 1168; *Kavanaugh v. Thompson*, 16 Ala. 817. It results, that the matter of election, presented in the pleadings, does not impart equity to this feature of the bill; for the Probate Court has the requisite jurisdiction to do justice to the parties.—*Kavanaugh v. Thompson, supra.*

We have shown above that an administrator *de bonis non* may proceed in the first instance in the Chancery Court, to recover the unadministered assets in the hands of his predecessor, without showing or averring any special, equitable ground therefor. This right, however, is qualified by the condition, that the concurrent jurisdiction of the Probate Court has not previously attached. If the jurisdiction of the Probate Court has previously attached, then the bill must show a necessity for equitable relief, which the Probate Court is incompetent to administer. The remaining inquiry, then, is, had the Probate Court taken jurisdiction of Mrs. Billingslea's final settlement? The plea avers that, "on the 29th June, 1877, the said complainant caused respondents to be cited in and by said Probate Court, to appear and make a final settlement of the said administration of Harriet Billingslea of the estate of said Glenn, deceased, and that respondents did appear in said Probate Court, on, to-wit, 22d October, 1877, and filed the accounts and vouchers of the said Harriet Billingslea for the final settlement of her administration," &c. The bill in this case was filed, and the summons issued and served, August 23d, 1877—after the citation was served, and before the account-current was filed. It is contended for appellee, that some importance is to be attached to the fact averred in the plea, that "complainant caused respondents to be cited"; and that the jurisdiction of the Probate Court attached from that time.

The statutory direction for settlements by removed or resigned administrators is found in sections 2590 to 2596, inclusive, and 2537 to 2541, inclusive, Code of 1876. It will be observed that it is made the duty of such administrators to settle their administrations within one month after their authority ceases; and if the administrator be in default, "the court may compel him by attachment, or may state the account against him from the materials in his office," &c. Nothing is said about any action to be taken by the administrator *de bonis non*, or even about citation to settle. The court, it would seem, acts in the premises *ex mero motu*. Still, the practice has grown up, and it is reasonable and just, that before coercive measures are resorted to, the administrator is entitled to notice by citation, that he may have an opportunity of explaining his seeming default, and of proceeding then

(23)

to make settlement, or to take steps with a view thereto. We do not think the citation to show cause is taking jurisdiction of the settlement by the Probate Court, within the rule. We have examined our decisions, and do not find that any of them discuss the question, when, or by what steps, jurisdiction attaches.

The other ground urged in the plea is, that Mrs. Billingslea had in fact made two final settlements of her said administration in the Probate Court; one in 1866, and the other in 1868. From each of these decrees an appeal was prosecuted to this court, and they were severally reversed in 1867 and in 1870; and in each case the cause remanded.—*Glenn v. Glenn*, 41 Ala. 571; *Billingslea v. Glenn*, 45 Ala. 540. As to this last reversal and remandment, the plea states, "that no certificate of the reversal of said cause was received by said Probate Court, nor said court advised of such reversal, prior to June 29th, 1877; and that on said 29th June, 1877, the said complainant caused respondents to be cited," &c. The question is, were the proceedings in the Probate Court discontinued by this delay? In *Ex parte Remsen*, 31 Ala. 270, this court considered and cited the authorities bearing on this question, and reached the conclusion, that mere non-action of a party in the premises, though the court or clerk for a number of terms fails to docket the cause, or to take action in it, will not work its discontinuance. It requires some contributory action by the plaintiff, to produce that result.

The case of *Doe, ex dem. Brown v. Clements*, 24 Ala. 354, is a very strong one. In that case, this court rendered a judgment of affirmance of the judgment of the Circuit Court, at the June term, 1843. The case was carried, by writ of error, to the Supreme Court of the United States, and, in December, 1844, the judgment of this court was there reversed, and the cause remanded. The case came up in this court, at the January term, 1854, when it was insisted by defendants in error, "that the cause stands discontinued by operation of law." There had been nine years since the reversal, during which the cause had remained off the docket, and no notice taken of it in this court. It was said in the opinion, that "the mandate, or certificate of reversal, did not reach this court until recently, when the cause was ordered to be placed on the docket." In reply to the argument that the suit was discontinued by operation of law, this court said: "Our opinion is otherwise. It is the duty of the clerk of the Supreme Court of the United States, to forward to this court the evidence of the reversal of the judgment, in order that the cause may be disposed of in conformity to the decision of that court. If this evidence is delayed for a period short of that

[Glenn's Adm'r v. Billingslea.]

which would operate a bar to the right to proceed, it should not be allowed to prejudice the party who succeeded in the court above." And this court entertained jurisdiction of the cause, and reversed its own decision pursuant to the decision of the Federal Supreme Court, and remanded the cause. What is meant by the expression, "bar to the right to proceed," is not explained. It must be more than nine years; for nine years of non-action had been allowed to elapse in that case. We suppose the court had reference to the presumption of settlement, which the law raises, of all controversies and disputes which are permitted to slumber for twenty years.—*Rhodes v. Turner*, 21 Ala. 210; *Barnett v. Tarrence*, 23 Ala. 463; *Austin v. Jordan*, 35 Ala. 642; *Goodwyn v. Baldwin*, 59 Ala. 127; *Coyle v. Wilkins*, 57 Ala. 108. In the present case, the delay was seven years. We think the case of *Doe, ex dem. v. Clements*, cited above, is fatally decisive of the argument based on lapse of time, and that the proceedings had not become discontinued thereby.

It is contended that the plea is insufficient, for two reasons: first, because it does not aver that the administrator *de bonis non*, or the distributees, were made parties to the settlement averred to have been made in October, 1877; second, it does not aver that the administrator *de bonis non* had "personal notice of the time of such settlement served on him," under section 2538, Code of 1876. Sections 2590 to 2596, inclusive, Code of 1876, are but reprints of sections 1876 to 1882, inclusive, of the Code of 1852—Revised Code, sections 2232 to 2238. Sections 2537 to 2540, Code of 1876, embody the provisions of the act "To amend the laws regulating the settlement of estates of deceased persons," approved February 5, 1858.—Pamph. Acts, 53. These sections, and this statute, evidently relate to the same subject as that embraced in sections 2590 to 2596, and prescribe some requisites, and confer some powers, not found in the older enactment. They must be construed together, and each given operation, as they do not appear to be repugnant to each other. It would have been better, and less likely to mislead, if, in the codification, the later statute had been interwoven with the former sections of the Code, or, at all events, if they had been placed in juxtaposition. But the question of the regularity of that settlement, or its legal sufficiency, is not the issue before us. It is not material whether or not any settlement has been made since the last reversal in this court. The question is, had the jurisdiction of the Probate Court attached, and were the proceedings still alive and pending? Our conclusions, expressed above, answer these questions in the affirmative.

It is contended for appellant, that the first two settlements

made by Mrs. Billingslea in the Probate Court, were with Waller, former administrator *de bonis non ;* that Waller died in 1872, five years before steps were taken to make the last settlement, and that during all that time there was no revivor, or motion to revive the proceedings in the Probate Court; that the bill and plea show these facts, and that the pro- ceedings abated by the failure to revive within eighteen months. This argument is rested on section 2908 of the Code of 1876, which provides, that " no action abates by the death, or other disability, of the plaintiff or defendant, if the cause of action survive or continue ; but the same must, on motion within eighteen months thereafter, be revived," &c. We think this statute has no reference to settlements of administrators, for the following reasons : First, this section is found in Part 3, title 1, of the Code, commencing with sec- tion 2890 ; which title relates to " proceedings in civil actions, in courts of common law." An administrator's settlement is not a " civil action in a court of common law."—*Forester v. Forester,* 35 Ala. 594 : *Kirtland, Ex parte,* 49 Ala. 403. Sec- ond, Probate Court proceedings, in administration settlements, are not suits in which there is a plaintiff or defendant, as we understand that phrase. True, issue may be formed, and a contest had, on such settlements ; but they are not the nor- mal or primary state of such proceedings. There is no plain- tiff to complain, no defendant to defend or plead. The set- tling administrator is generally the moving party, while the decree is generally rendered against him. While the statute requires that the administrator *de bonis non* shall have per- sonal notice of such settlement (Code of 1876, § 2538), who may contest the account, and claim larger debits, or smaller credits, &c. (section 2594) ; still, unless some exceptions are filed to the account current, or other issue formed, he does not become a party to the suit or record, until a decree is rendered in his favor or against him.—Code, §§ 2591, 2595, 2539.

The chancellor did not err in holding the plea sufficient to bar the right to remove Mrs. Billingslea's settlement into the Chancery Court. The decree of the chancellor is affirmed.

BRICKELL, C. J., not sitting, being interested in the settle- ment.